**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**I. POSNER, INC., Posner Distributing Corp., and Posner Beauty and Barber Supply Corp., et al., Respondents.**

No. 252, Docket 29047.

United States Court of Appeals
Second Circuit.

Submitted Jan. 5, 1965.

Decided March 15, 1965.

Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Melvin Pollack, Hans J. Lehmann, Attys., N. L. R. B., for petitioner.

Leight, Drimmer & Weinstein, New York City (Isidore Drimmer, New York City, of counsel), for respondents.

Before LUMBARD, Chief Judge, and WATERMAN and HAYS, Circuit Judges.

WATERMAN, Circuit Judge:

The National Labor Relations Board petitions for enforcement of an order, reported at 145 N.L.R.B. 1190, based upon a finding that respondents violated Sections 8(a) (1), 8(a) (3), and 8(a) (4) of the National Labor Relations Act, 29 U.S.C. §§ 158(a) (1), (3), and (4). Specifically, the Board agreed with its trial examiner that respondents, in violation of Section 8(a) (1), had attempted to defeat a unionization campaign amongst their employees by threats of reprisals, offers of benefits, interrogation, surveillance, and restrictions on meetings between their employees and a union representative. The Board also agreed with its trial examiner that respondents, in violation of Section 8(a) (3), had discharged eight employees on account of their union activities, and that, in violation of Section 8(a) (4), one of these employees was also discharged for testifying at a Board hearing. The Board ordered the respondents to cease and desist from committing these and related unfair labor practices in the future, to reinstate the discharged employees with back pay, and to post the customary notices.

■ We hold that respondents were accorded a fair hearing by the trial examiner and that the Board's order was supported by substantial evidence, within the principles of Universal Camera Corp. v. NLRB, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951), except as set forth hereinafter.

■ The finding of unlawful interrogation was based upon a single encounter occurring at the start of the unionization campaign, in which Jose Greenberg, a supervisor, asked Guillermo Cuellar, an employee, "what did [he] know about the Union, District 65," and "who were the leaders of Union 65." Since these questions were not inherently coercive, the Board's finding must be reviewed in the light of the doctrine stated in Bourne v. NLRB, 332 F.2d 47, 48 (2 Cir. 1964): "Under our decisions interrogation, not itself threatening, is not held to be an un-

fair labor practice unless it meets certain fairly severe standards."

It is true, as the Board points out, that the encounter took place against a background of employer hostility and discrimination. See I. Posner, Inc., 133 N.L.R.B. 1573 (1961); I. Posner, Inc., 133 N.L.R.B. 1567, enforced in part, 304 F.2d 773 (2 Cir. 1962). It is also true that the information sought by Greenberg could have been used to take action against individual employees, particularly the leaders of the unionization campaign in the plant, and that Cuellar's answer, namely that he had "only heard through rumors that the union was beginning * * *," was probably not strictly truthful. These facts have been regarded, in past decisions, as indicia of unlawful interrogation. Bourne v. NLRB, supra; NLRB v. Firedoor Corp. of America, 291 F.2d 328, 331 (2 Cir.), cert. denied, 368 U.S. 921, 82 S.Ct. 242, 7 L.Ed.2d 136 (1961); NLRB v. Syracuse Color Press, Inc., 209 F.2d 596, 599 (2 Cir.), cert. denied, 347 U.S. 966, 74 S.Ct. 777, 98 L.Ed. 1108 (1954).

At the same time, these decisions have looked also to the rank of the interrogator in the company hierarchy and to the setting in which the questioning took place. Greenberg was in charge of a single room in respondents' factory, in which twenty women worked. His questioning of Cuellar took place in Cuellar's home, where Greenberg formerly lived with the Cuellars and where, after Greenberg moved away, he often returned to visit Cuellar. The two men had known each other for eight years, they were fellow Hondurans and close friends, and Greenberg had gotten Cuellar his job with respondents.

■ In view of the apparent brevity and amicable atmosphere of the questioning, we hold that the "fairly severe standards" required for a finding of coercive interrogation have not been met. The Board has adduced no other examples of allegedly coercive interrogation, although it has shown that respondents repeatedly committed other unfair labor practices. Accordingly, paragraph 1(c)

of the Board's cease and desist order shall be modified so as to omit the words: "Unlawfully interrogating employees as to their union sympathies, * * *."

The Board based its finding of interference with the right to unionize, in part, on the following statement by the trial examiner:

"On August 10, [1962] in the morning before work hours began, [Hamilton] Posner was again outside the plant as [Al] Evanoff [a union official] spoke with employees on the street. With four of them, Evanoff approached Posner and asked if they could talk to him regarding recent layoffs. Posner declined to talk to anyone from the Union. During the lunch period an even larger group went to Posner's office and asked to speak to him. After calling Posner, his secretary reported that he declined to talk to any employees while a union representative was present."

■ No claim is made that this conduct was a refusal to bargain, in violation of Section 8(a) (5). Nor would such a claim be justified, for the Board has presented no evidence that on August 10 Evanoff represented a majority of respondents' employees, or even that he would have been a majority's representative but for respondents' unfair labor practices. Moreover, we have found no decisions which hold that an employer, pursuant to Section 8(a) (1), must discuss grievances with a union organizer who represents only a minority of his employees. To impose such an obligation on an employer would be an unwarranted extension of the principles of Section 8 (a) (5), which Congress has deliberately confined to relations with bargaining representatives enjoying majority support.

■ Consequently, we reject the Board's finding that respondents committed an unfair labor practice by refusing to talk with Evanoff. No modification of the Board's order is required in this respect, however, for there were a number of related instances of interference with meetings between Evanoff and the employees which are properly substantiated.

The Board based its finding that respondents had discharged one of their employees for testifying at a Board hearing, as well as for his union activities, on the following statements by the trial examiner:

"As a result of the Union's petition a Board hearing was held on September 17, 20, 24 and October 2 [1962]. Between the first and second sessions * * * [Hamilton] Posner then suggested that Marcos [Ortiz] * * * not go to the hearing * * *. Marcos apparently followed Posner's request and did not attend the next hearing session. He did, however, testify at the hearing on September 24."

Immediately after the hearing, Posner shifted Ortiz's work place to a storage space apart from all other employees, and seven weeks later Ortiz was laid off and not rehired. The trial examiner concluded that, in addition to his union activities, "Marcos Ortiz was also discharged because he testified at a Board hearing after Posner had tried to persuade him not to."

■ There is nothing whatever in the record to support the crucial finding that Posner suggested, requested, or urged Ortiz not to attend the Board hearings. Furthermore, the shift in his work place and his subsequent discharge can be fully explained by Ortiz's union activities. He was the union delegate on the second floor of the plant, and on at least two occasions he was designated a member of the union committee in correspondence from Evanoff to Posner.

■■ We hold that the Board has not demonstrated by substantial evidence that respondents violated Section 8(a) (4) in discharging Ortiz. Again, as was true of the unlawful interrogation, the Board has alleged no other violations of Section 8(a) (4) by respondents. Accordingly, paragraph 1(b) shall be stricken from the Board's cease and desist order, as shall the second "WE WILL NOT

* * * " paragraph of the notice to be posted by respondents. However, because Ortiz, like the seven other discharged employees, was discharged for his union activities, in violation of Section 8(a) (3), the Board's order that he be reinstated with back pay must stand.

Order enforced as modified.