**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**WELSH INDUSTRIES, INC., Respondent.**

**No. 17177.**

United States Court of Appeals
Sixth Circuit.

Nov. 29, 1967.

---

3. We, of course, pass no comment on the issues there raised.

Eugene B. Granoff, Atty., N. L. R. B., Washington, D. C., for petitioner, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, George B. Driesen, Anthony J. Obadal, Attys., N. L. R. B., Washington, D. C., on brief.

Richard J. Fritz, Detroit, Mich., for respondent, Stringari, Fritz, Fiott & Burwell, Kenneth J. Fiott, Conrad W. Kreger, Detroit, Mich., on brief.

Before O'SULLIVAN, PECK and COMBS, Circuit Judges.

O'SULLIVAN, Circuit Judge.

We here consider a petition of the National Labor Relations Board for enforcement of its order against respondent, Welsh Industries, Inc., of Vassar, Michigan, reported at 154 NLRB 463. The Board, affirming its trial examiner, found respondent guilty of violating Section 8(a) (1) and (3) of the Act, 29 U.S. C. § 158(a) (1) and (3). The events involved occurred in August and September, 1964, during a union[1] campaign to organize the employees of respondent company. Unfair labor practice charges were filed against the company in September, 1964. At a consent election held on January 6, 1965, the union by a vote of 36 to 22 won bargaining rights. Nothing suggests that the objectives of the Labor Management Relations Act—industrial peace and collective bargaining—were not thereby served, but the irritations of the campaign were kept alive by a full hearing in February, 1965, on each of the

---

1. International Union, Allied Industrial Workers of America, AFL–CIO.

**540**

charges made against the respondent—substantial or trifling. The substantial charge was the alleged discriminatory discharge of one Florence Smith, the leading union activist; the trifling ones related to the questioning of two out of 58 employees as to whether they had signed union cards, the granting of a wage increase during the campaign, the sending of disciplinary letters to two employees, and a company letter[2] sent to all its employees prior to the election. The proceedings developed a record out of which is brought to us a joint appendix of 228 pages.

The trial examiner followed a familiar pattern: he "credited" the testimony of the General Counsel's witnesses, found incredible the respondent's proofs on the critical issues, and, employing some quite broad inferences, found the respondent guilty on all counts.

### 1. Improper interrogation.

The respondent company was owned by two brothers, Glenn and Erwin (Bud) Welsh, both of whom took an active part in its management. Most of its 58 employees were women. After the union campaign started in August, 1964, the Welshes quite obviously "got wind of it." On the 5th of September Bud Welsh asked one of the women, a Mrs. Metro, if she had signed a union card. She replied in the negative and asked what was going on. Welsh told her that he and his brother knew that union cards had been passed around and signed the day before. On the same morning, Welsh asked another employee, a Mrs. Babcock, how many union cards she had. This employee testified that he went on to say that if the girls' "gripe" in wanting a union was for more money, "the girls got another raise coming anyways, and, as far as needing the union for more money, a union doesn't necessarily always get more money."

On this basis the trial examiner concluded:

"While these incidents in and of themselves are not weighty, the inquiries would naturally have the effect of inhibiting the employees from signing or accepting or carrying union cards or materials and thus would tend to interfere with their rights under Section 7 of the Act. In the absence of any reasonable justification for this conduct, it is found that these acts of interrogation violated Section 8(a) (1) of the Act."

 We deny enforcement to this part of the Board's order. To offend the Act, interrogation must rise to the level of coercion or restraint. Burke Golf Equipment Corp. v. NLRB, 284 F.2d 943, 944 (6th Cir. 1960); United Fireworks Mfg. Co., Inc. v. NLRB, 252 F.2d 428, 430 (6th Cir. 1958); NLRB v. Tennessee Coach Co., 191 F.2d 546, 555–556 (6th Cir. 1951). And we cannot agree with the trial examiner's legal conclusion that:

"In the absence of any reasonable justification for this conduct, it is found that these acts of interrogation violated Section 8(a) (1) of the Act."

The burden rests with the General Counsel to prove his charges; it is not required that the employer justify each innocuous inquiry about a union campaign. Lawson Milk Co. v. NLRB, 317 F.2d 756, 760 (6th Cir. 1963); NLRB v. Cleveland Trust Co., 214 F.2d 95, 99 (6th Cir. 1954).

### 2. Other 8(a) (1) violations.

 We conclude that the Board's finding of violation in the granting of a wage increase shortly after the beginning of the union campaign was not without support by substantial evidence. The five cent per hour raise was announced on September 8, 1964, and made effective as of October 1, 1964. Respondent was aware of the union's drive and was resisting. A like increase had been given annually, but customarily earlier in the year. The Welshes claimed the timing of the increase was motivated by unforeseen reductions in necessary capital outlays.

2. In its order the Board declined to pass on the examiner's conclusion as to the employee letter. This matter is therefore not before us.

The trial examiner, however, found as a fact that:

> "[T]he raise in 1964 was announced and confirmed at the times chosen by respondent in order to affect the employees in their activities in respect to union representation."

Considered in the context of contemporary events, the inference made was permissible. Such conduct violates Section 8(a) (1). NLRB v. Exchange Parts Co., 375 U.S. 405, 409–410, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964); accord, NLRB v. Valley Broadcasting Co., 189 F.2d 582, 585 (6th Cir. 1951); NLRB v. Bailey Co., 180 F.2d 278, 280 (6th Cir. 1950).

■ Another violation of Section 8(a) (1) was found in respondent's issuance of disciplinary letters in September, 1964, to the two most active and visible union protagonists, charging them with bothering other employees. This was likewise held to be a violation of Section 8(a) (3) of the Act. Finally, solicitation of complaints in order to discharge the leader of the pair was found to be unlawful under Section 8(a) (1). Relevant law would not be enhanced by a recital of the factual scenario behind these Board conclusions. Were we triers of the facts we might well find that the discipline received by Mesdames Arndt and Smith was a just desert; but in our reviewing capacity we cannot here say that an inference was unwarranted that some part of the respondent's motiviation was to discourage the union drive. It is within the domain of the Board to draw such inferences if supported by substantial evidence. NLRB v. Putnam Tool Co., 290 F.2d 663, 665 (6th Cir. 1961).

3. The discharge of Florence Smith.

■ Violations of Sections 8(a) (1) and (3) were found in the discharge of a Mrs. Florence Smith. This lady invited the union into the respondent's plant and was its most vocal and active promoter. It may fairly be inferred that even prior to the advent of the Union Mrs. Smith was considered a "bossy" and talkative busybody. There was evidence, however, that she was considered a good employee and had not received a reprimand or been disciplined, aside from an isolated incident in 1962, until her interest turned to promoting the union. Here also nothing would be added to the law of labor relations by a marshalling of the conflicting evidence and factual issues relative to her discharge. They are set out in detail in the trial examiner's decision, 154 NLRB 463. Notwithstanding that the lady genuinely may have deserved to be fired, we again must defer to the factual findings of the Board and its trial examiner; we cannot say the facts found and inferences drawn are without substantial evidentiary support. And we may not substitute our own views and inferences, thus trespassing on the Board's prerogatives. 29 U.S.C. § 160(e). NLRB v. Walton Mfg. Co., 369 U.S. 404, 405, 82 S.Ct. 853, 7 L.Ed.2d 829 (1962); Universal Camera Corp. v. NLRB, 340 U.S. 474, 490–491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

We direct enforcement of the Board's order in all respects save its conclusion that the interrogation of employees Metro and Babcock was in violation of Section 8(a) (1).