## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## PROFESSIONAL TAPE COMPANY, Inc., Respondent.

### No. 17668.

United States Court of Appeals, Seventh Circuit.

March 5, 1970.

As Amended on Denial of Rehearing April 21, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, J. L. A. de Passalacqua, Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, William F. Wachter, Attys., N. L. R. B., Washington, D. C., for petitioner.

Barnabas F. Sears, James N. Kosmond, Chicago, Ill., William J. Kilbridge, Bloodell, Sears, Sugrue & Crowley, Chicago, Ill., of counsel, for respondent.

Before CASTLE, Senior Circuit Judge, and KILEY and KERNER, Circuit Judges.

KERNER, Circuit Judge.

This matter comes before us on application of the National Labor Relations Board (Board) pursuant to Section 10 (e) of the National Labor Relations Act (Act), as amended, 29 U.S.C. § 151 et seq., § 160(e), for enforcement of its order of May 16, 1968.

In its order the Board directed Professional Tape Company, Inc. (Company), to cease and desist from interfering with the rights of employees under § 7 to seek membership in United Papermakers and Paperworkers, AFL–CIO (Union) or any other union by interrogating its employees or by any other methods calculated to discourage membership. In the affirmative, the Board ordered the Company to offer reinstatement to a former employee, Michael Kowal, who was discharged for union activities. The Company was also directed to post the usual notices.

The record reveals that employee Michael Kowal contacted the United Papermakers and Paperworkers, AFL–CIO, and obtained union literature which he distributed at the respondent's plant. Kowal also distributed 21 union authorization cards and the signed ones were returned to the union. On August 1, 1967, a petition for representation was filed by the Union. Having received a copy of the petition, the Company undertook an investigation of the Union's ac-

tivities. Victor Maruska, the plant superintendent, and the Company President Nerad questioned various employees about the union activities and whether they had signed authorization cards. One employee, Elizabeth Schmolke, reported to President Nerad that Kowal was conducting the campaign for the Union and the President asked her to sign a sworn statement to that effect, which she did.

Two employees, Joseph Okryesik and J. B. Hawkins, were singled out for extensive questioning. Okryesik, a youth of 18 who is Kowal's cousin, was asked by Maruska whether he had signed one of the cards to which he replied "No." A few days later the President also questioned Okryesik as to whether or not he signed a card and when Okryesik said "No," the President asked whether he had ever worked in a union shop, to which Okryesik also replied "No." He was then asked if he would take a religious oath "on the Bible" that he did not sign a union card. Both Maruska and Nerad denied questioning Okryesik.

Maruska asked employee Hawkins whether he had heard anything as to the Union and if he had signed a card and Hawkins replied in the negative. Later Maruska accused Hawkins of starting the Union. Other employees were also questioned by Maruska as to the Union but when they answered in the negative they were accused of not telling the truth. At the hearing Maruska denied having any of these conversations.

On the morning of August 11, 1967, Kowal asked Maruska for permission to leave at 1:00 p. m. to go for a physical check-up. He expected to see William Gibbons, the International Representative of the Union, but had decided that if he told his plans to Maruska, he would be fired. At about 10:00 a. m. Kowal was notified by Gibbons that they needed him at the Labor Board immediately. Since Maruska was not in the plant, Kowal left word with a secretary that he was leaving because his wife had become ill. Late in the afternoon Kowal called Maruska and asked whether he

should come back to work that day. Maruska told him to return because there was work to be done but when Kowal arrived, his time card was missing. Kowal went to Maruska and explained that his wife had become ill and he had taken her to a doctor. Maruska asked the name and address of the doctor and then checked it in the telephone book. Without telling Kowal he could not find the doctor's name, Maruska asked him to sign a statement explaining his absence with the doctor's name and address included. President Nerad drove to the doctor's address as given by Kowal and could not find a doctor located at the address. On August 14, Kowal was fired.

■ As to the § 8(a) (1) charge of interrogating the employees, the hearing examiner accepted the testimony of Okryesik and Hawkins and did not find Maruska and Nerad credible. We think that substantial evidence on the record as a whole supports the findings of the hearing examiner. Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456 (1951). Further, we find that the Board's conclusion that the Company violated § 8(a) (1) was proper in that the interrogations of the employees were oppressive. This was not a mere inquiry to determine Union support. The continuous questioning of Hawkins and Okryesik suggested that the employees were being accused of lying about the union activities and in so doing, the Company created an atmosphere of antagonism toward the Union. Evidence of this is that most of the employees lied about their union activities. Respondent's reliance on N. L. R. B. v. I. Posner, Inc., 342 F.2d 826 (2d Cir. 1965), and N. L. R. B. v. Welsh Industries, Inc., 385 F.2d 538 (6th Cir. 1967), is misplaced. In *Posner*, the interrogation was conducted by a section supervisor at the home of the employee who was a close friend of the supervisor for eight years, the supervisor having originally obtained the job with respondent for this employee. 342 F.2d at 828. Here the President and plant supervisor conducted the

questioning at the plant during working hours. In *Welsh*, the employees were only asked if they had signed a union card. 385 F.2d at 540. Here the questioning was more burdensome. We think that the General Counsel has sustained his burden of proving the coercive nature to the interrogations. Bourne v. N. L. R. B., 332 F.2d 47, 48 (2d Cir. 1964).

■ We conclude that substantial evidence on the record as a whole also supports the Board's finding that respondent violated § 8(a) (3) and (1) in discharging Kowal because of his union organizing activities. Universal Camera Corp. v. N. L. R. B., *supra*. Kowal was a good employee and there was no surveillance of his activities until the union representation petition was filed. Prior to the Kowal incident, no employee was ever asked to sign a statement as to the reasons for his absence. The detailed procedures to "catch" Kowal in his lie were further evidence that his union activities were the cause of his being fired.

For the foregoing reasons, we grant the Board's petition for enforcement.

Enforcement ordered.

CASTLE, Senior Circuit Judge (concurring in part and dissenting in part).

I agree with the majority that the record supports the Board's finding that employee Kowal was discharged in violation of the Act.

However, I respectfully dissent from the part of the majority opinion which enforces the Board's holding that the employer violated § 8(a) (1) of the Act by interrogating certain employees as to whether they had signed union authorization cards. Even if all issues of credibility are resolved in favor of the Board, the interrogations disclosed by the record do not rise to the level of restraint or coercion necessary to sustain a finding of an unfair labor practice. See N. L. R. B. v. M. J. McCarthy Motor Sales Co., 309 F.2d 732, 734 (7th Cir. 1962), N. L. R. B. v. Welsh Industries, 385 F.2d 538, 540 (6th Cir. 1967). Such interro-

gations, which, as here, were not part of an anti-union campaign and which were made without threats or promises, do not violate the Act. See N. L. R. B. v. Mid West Towel & Linen Service, Inc., 339 F.2d 958, 961 (7th Cir. 1964); N. L. R. B. v. Peerless Products, Inc., 264 F.2d 769, 772, 83 A.L.R.2d 527 (7th Cir. 1959); Burke Golf Equip. Co. v. N. L. R. B., 284 F.2d 943, 944 (6th Cir. 1960).

Thus, based upon the record as a whole, Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 488, 71 S.Ct. 456 (1951), I am of the opinion that the General Counsel failed to meet his burden of proving the unlawfulness of the employer's interrogations. See N. L. R. B. v. Welsh Industries, *supra*, 385 F.2d at 540; N. L. R. B. v. Peerless Products, Inc., *supra*, 264 F.2d at 772.