The **CONOLON CORPORATION,** Petitioner,

v.

The **NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 24796.

United States Court of Appeals, Ninth Circuit.

Aug. 4, 1970.

Roy E. Potts (argued), Victor F. Yacullo of Kindel & Anderson, Los Angeles, Cal., for appellant.

Leonard M. Wagman (argued), Sanford H. Fisher, Attys., Marcel Mallet-Prevost, Dominick L. Manoli, Arnold Ordman, N. L. R. B., Washington, D. C.; Ralph E. Kennedy, Reg. Director, N. L. R. B., Arnold, Smith & Schwarts, Los Angeles, Cal., for appellee.

Before CHAMBERS and CARTER, Circuit Judges, and BYRNE, District Judge *

CARTER, Circuit Judge.

This matter arises on application of the Conolon Corporation, hereafter the Company, to set aside the Board's order and a cross-application of the Board to enforce the order. The case arises with a background of prior activities by the Company in interfering with the rights of employees. On June 8, 1967, the Board conducted a representation election among production and maintenance employees at the plant of the Company in Santa Ana, California. The Union filed objections to conduct affecting the results of that election, and the Board set the election aside and ordered a new election to be held. A second election was conducted on December 15, 1967 in the same production and maintenance unit, consisting of approximately 318 eligible employees. The conduct and matters hereinafter referred to occurred during the months of November and December 1967.

The Board found violations of § 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1), as follows: the Company announced a new and further wage survey accompanying the regular and customary announcement of a present wage increase; the Company promised to promote Jones, an employee, if he supported the Company; the Company in a discriminatory manner enforced its non-solicitation rule; the Company solicited mini-skirted clericals from a nonbargaining unit to distribute anti-union literature; and the Company through one of the clericals threatened an employee Trujillo with loss of benefits and promised a wage increase. The Board also found that the Company had denied overtime to Jones because of his union adherence in violation of § 8(a) (3) and (1) of the Act, 29 U.S.C. § 158(a) (3) and (1). The Board's decision and order is reported at 175 NLRB, No. 9.

■ 1. *The announcement of a new wage survey.*

On November 2, 1967 President Ashby addressed a meeting of employees and stated that a wage survey had been made and that they would receive a wage increase of 10 cents an hour effective October 28, 1967. This statement was not alleged to be an unfair labor practice or an interference with the election. The Company was following a practice of prior years. However, Ashby also stated that another survey would be made some time after the first of the year and if necessary, wage rates would be changed again.

The Company was aware that the federal minimum wage was to be changed on February 1, 1968 and had anticipat-

---

* Honorable William M. Byrne, Sr. United States District Judge, Central Division of California, sitting by designation.

ed that this would occasion a further change in wage rates. Prior to Ashby's talk, the Company considered the possibility of making a further wage increase that would take into account this change in the federal minimum wage law, due to occur in February 1968. The majority of the Company's wage committee felt that the increase should be made in November along with the increase then being given. However, the President and Vice President of the Company overruled the committee on the ground that any further increase would be a departure from past practice and would make the Company vulnerable to an unfair labor practice charge.

Thus the Company departed from its standard practice when Ashby informed the employees that *another survey* was planned for some time after the first of the year and that wage rates might be changed again. In its brief to the Board, the Company conceded that this wage survey announcement at the November meeting was unprecedented. The examiner found that "although Ashby did not expressly promise that this [the wage survey] would occur, the only accounting for his announcement to them of another survey within a short period of time was to convey to the employees the expectation of a further increase. I find that by this announcement made while the representation election was pending respondent violated § 8(a) (1) of the Act and interfered with the election." Although an express promise was not made, there was the conveyance of the expectation of a future increase. It was an implicit promise although not an express one. At the hearing before the trial examiner, Vice President Barrie testified that he and President Ashby recognized that the granting of a second wage increase at the November meeting would have been "something we had not done in previous years."

The record indicates that there was a background of employer interference with the rights of employees. The first election on June 8, 1967, had been set aside and the new election, held eventually on December 15, 1967, was ordered by the Regional Director. The record shows the Company's manifest hostility by its interference with employees' rights as set forth elsewhere herein.

In addition, the Company failed to explain its action in announcing the new wage survey on the basis of legitimate business conditions, and the Board could reasonably conclude, as it did, that the Company was prompted by an unlawful purpose. It is clear that the Board so found since it approved the examiner's findings and conclusions that the announcement of the wage survey, while an election was pending, violated § 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1) and interfered with the election.

A wage increase shortly before an election, although ordinarily made annually earlier in the year, has been held to be an interference with the election and an unfair labor practice. N.L.R.B. v. Welsh Industries, Inc., (6 Cir. 1967) 385 F.2d 538, 540–541.

It is a proper inference that the announcement was to emphasize to the employees that they had "no need for a collective bargaining agent," see N.L.R.B. v. Bailey, (6 Cir. 1950) 180 F.2d 278, 279, and suggested to the employees "that the source of benefits now offered is also the source from which future benefits must flow and which may dry up if not obliged." N.L.R.B. v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 460, 11 L.Ed.2d 435 (1964).

The Company contends that the statement by President Ashby was an expression of views under § 8(c) of the Act, 29 U.S.C. § 158(c). The Board, in substance, determined that President Ashby's announcement of a new wage survey was a promise of a benefit designed to interfere with the employees' rights. As such it is not protected under § 8(c) of the Act, 29 U.S.C. § 158(c).

In any event, the question was for the Board to decide. "The determination of the category into which the remarks fell was a question of fact for the Board, National Labor Relations

Board v. Virginia Power and Electric Co., supra, (314 U.S. 469, 62 S.Ct. 344, 86 L.Ed. 348) and the Board's finding on the fact may not be disturbed," Elastic Stop Nut Corp. v. N.L.R.B., (8 Cir. 1944) 142 F.2d 371, 378. See, N.L.R.B. v. Eastern Die Co., (1 Cir. 1965) 340 F.2d 607, cert. den. 381 U.S. 951, 85 S. Ct. 1804, 14 L.Ed.2d 724.

■ 2. *The Company's promise to promote Jones if he supports the Company.*

In November of 1967 Jones, one of the employees, talked to Vice President Barrie about his progress with the Company since his return from military service. Barrie assured him that if he did a good job and learned the business there was a future for him with the Company. Jones told Barrie that he had attended Union meetings to hear both sides of the story; that he had no feelings one way or the other; and that he liked the Company and was simply looking for information before he cast his ballot. Jones testified that Barrie then said that he knew that Jones had a significant influence among the employees and (1) asked Jones to use his influence to persuade other employees against the Union and (2) told him that if he were for the Company he would be "able to move up in position." The examiner discredited Jones's statement as to using his influence to persuade other employees against the Union but found that Barrie had made the second part of the statement as shown above. The Board adopted the examiner's findings without comment or modification. The Company argues credibility. This was a problem for the examiner. Barrie's statement clearly conveyed a promise of benefit to Jones in return for Jones's repudiation of the Union.

"[I]nterference is no less interference because it is accomplished through allurements rather than coercion, * * *". Western Cartridge Co. v. N. L. R. B., (7 Cir. 1943) 134 F.2d 240, 244, cert. den. 320 U.S. 746, 64 S.Ct. 48, 88 L.Ed. 443; N. L. R. B. v. West Coast Casket Co., (9 Cir. 1953) 205 F.2d 902,

905. "* * * [P]romises of benefits from voting against the Union are prohibited," N. L. R. B. v. Luisi Truck Lines, (9 Cir. 1967) 384 F.2d 842, 845.

The Company relies on Salinas Valley Broadcasting Corp., v. N. L. R. B., (9 Cir. 1964) 334 F.2d 604–614. The case is not controlling. The factual situation therein was different from the case at hand.

■ 3. *Denial of overtime to employee Jones.*

Jones, on December 14, 1967, the day before the election, put on a white shirt with the words "Vote Yes" on the back, which another employee had brought to the plant. Shortly thereafter Vice President Barrie spoke to Jones and said, "I see you picked your side." Later the same day, one of the supervisors approached Jones and told him there was no overtime work for him that day because no fishing rods were being shipped from the specialty shop. Jones told the supervisor that, in effect, he was being sent home and denied overtime because he was wearing a union shirt. Jones talked to Vice President Barrie. Barrie then contended there was a shortage of materials with which to construct the metal cases in which special fishing rods were packaged. During the conversation, Barrie said to Jones "that he would like see him take that shirt off."

The Company's defense was there was a shortage of material needed to construct the metal packaging for the rods. Testimony was offered that the Company received the last shipment of packaging material on June 23, 1967, and the next shipment did not arrive until January 23, 1968. However, Jones worked overtime on December 13, the day before the incident in question, and worked overtime on December 15 and the four succeeding work days. The examiner rejected the contention that Jones was denied overtime because of a shortage of materials and found that he was denied overtime in a discriminatory manner on December 14. The Board approved the

examiner's finding with change or comment.

The Act is violated when the employer withholds overtime from an employee because of the employee's union activity. N. L. R. B. v. Buddy Schoellkopf Products, Inc., (5 Cir. 1969) 410 F.2d 82, 87; N. L. R. B. v. Unified Industries Inc., (6 Cir. 1960) 273 F.2d 431, 432. The timing of the supervisor's announcement that Jones would not get overtime work on December 14, and the Company's animus as shown by its unlawful efforts to persuade Jones to reject the Union, amply support the Board's holding that the denial of overtime work to Jones was unlawfully motivated. See, N. L. R. B. v. Tonkin Corporation of California, (9 Cir. 1965) 352 F.2d 509, 511.

**4.** *Discriminatory enforcement of the non-solicitation rule.*

The Company by rule, prohibited solicitation in working areas during working hours, but wearing of insignia indicating an employee's allegiance was not prohibited.

A Miss Roberts passed out union literature on December 13, 1967 as she waited to punch out. On December 14, she was ordered to report to the office and reprimanded by President Ashby for violating Company rules. A note of the incident was placed in her file. On December 15, 1967, Whiting, an employee, passed out union literature near the time clock. He was ordered by President Ashby of the company to "get out of here and don't come back with that paper." The examiner found no discriminatory enforcement of the no-solicitation rule.

The Board found discrimination. No question of credibility was involved. The Board pointed out the facts, referred to hereafter in Sec. 5, that on December 15 the Company had a number of clerical employees in mini-skirts and boots distributing anti-union literature as the morning shift was punching in.

The Company argues that the mini-skirted employees were not agents of the Company and were in a non-bargaining unit. Vice President Barrie testified they were not paid for their time in passing out literature and were told they would be volunteering their time. Further the Company contends that another employee, Jeffers, had been earlier reprimanded for passing out union literature. However, Jeffers received no written reprimand, only an instruction against repetition of the offense.

The Board's conclusion that the Company "enforced its non-solicitation (rule) in a disparate and discriminating manner to punish Roberts for her support of the Union and to deter her from such activities in the future in violation of § 8(a) (1) of the Act" is not clearly wrong.

An employer violates § 8(a) (1), 29 U.S.C. § 158(a) (1) if it enforces a non-solicitation rule in a discriminatory manner, Revere Camera Co. v. N. L. R. B., (7 Cir. 1962) 304 F.2d 162, 165; See William L. Bonnell Co., Inc., v. N. L. R. B., (5 Cir. 1969) 405 F.2d 593, 595.

**5.** *Distribution of literature by the mini-skirted clericals.*

The Union had passed out a card to the effect that James Drury, the actor famous in the "Virginian," belonged to a union. The Union had used the terms "mini-skirts," "mini-checks" and "high boots" in its campaign. The Company after checking with Drury, arranged to pass out pictures of Drury with a reference to him in connection therewith. Four or five clerical employees in a non-bargaining unit volunteered to pass out the pictures. They wore mini-skirts and high boots. Some of the boots were supplied by the company. The girl clericals wore signs "Yes on minis—No on Union." They passed out pictures of James Drury, on the back of which was the phrase "Vote No." A picture of Drury was stapled to the card or sign that each girl was wearing and across their backs were the words, "The Virginian says Vote No."

The examiner found that the conduct interfered with the election and was a

violation of § 8(a) (1) of the Act, 29 U.S.C. § 158(a) (1). The Board accepted the findings of the examiner and also commented in its order on the matter.

We consider the alleged violation a tempest in a teapot. Employer solicitation or interrogation standing alone is ordinarily not sufficient to support a violation of the Act. Ordinarily the solicitation or interrogation must be accompanied by threats of reprisal, force or by promises of benefit. Nowhere in the decision of the Board or the trial examiner is there any direct or implied finding that the activities of the mini-skirted clericals in passing out literature was accompanied by any threat of reprisal, force or any promise of benefit, with the exception of the remarks of Miss Fakler, discussed hereafter. Nor can such a finding be supported by the record. The record is devoid of threat, coercion or promises on the part of the mini-skirted clericals in passing out the antiunion literature, with the exception of the remarks of Fakler.

We decline to enforce this portion of the Board's order.

■ 6. *The alleged threats and promises to Trujillo.*

The examiner found that Trujillo, an employee, after he had already voted, had a conversation with Miss Fakler, one of the mini-skirted clericals. She stated to him that if the Union won the election it would take away all the benefits the Company had provided, and that if he wanted a raise all he had to do was talk to President Ashby and he would get the raise. It appears that the conservation was instigated by the union representative, Pat Daniels, who asked Fakler why she did not want the Union. The examiner found that Fakler had no expressed or implied authority to assure anyone a wage increase or withdrawal of benefits and that she was representing her personal views which had been solicited by the union representative. The examiner found that the Company had not committed an unfair labor practice that interfered with the election.

The Board overruled the examiner and found otherwise. In the factual situation presented we agree with the examiner. This part of the Board's order will not be enforced.

Enforcement of the order of the Board is granted with the exception of the portions of the order discussed in Nos. 5 and 6, supra, and as to those portions of the order, enforcement is denied.