**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**and**

**Teamsters Local 856, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers, Intervenor,**

**v.**

**MARINE WORLD USA, Respondent.**

**No. 78–2440.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1980.

Florence Lewis Smith, Atty., Washington, D. C., argued, for petitioner; Elliott Moore, N. L. R. B., Washington, D. C., on brief.

Samuel L. Holmes, Angell, Adams & Holmes, San Francisco, Cal., for respondent.

Before BROWNING, Chief Judge, MERRILL, Circuit Judge, and HOFFMAN *, Senior District Judge.

WALTER E. HOFFMAN, Senior District Judge:

This is a petition for enforcement of an order of the National Labor Relations Board based upon alleged violations of section 8(a)(1) of the National Labor Relations Act, 29 U.S.C. § 158(a)(1), in connection with certain written statements issued by Respondent's president during a union election campaign.

Respondent, Marine World USA, operates an amusement park in Redwood City, California. For approximately ten years preceding this action, a number of Respondent's employees were represented by the Teamsters Local 856 (herein the Teamsters).[1] The most recent collective-bargaining agreement expired on November 30, 1975, before the parties could agree on new terms. Negotiations terminated in February 1976, after the unit employees rejected the final offer submitted by Respondent.

On March 3, 1976, a decertification petition covering the unit employees was filed. Shortly thereafter, the Marine World Employees Union (herein the Employees Union) filed a petition seeking to represent the employees in that unit. In early April, Respondent's president, Demetrios, wrote letters to both unions seeking their consent to a wage increase at rates previously proposed to the Teamsters during contract negotiations. Marine World was concerned that if a wage increase was not instituted, it would lose several employees to a competing amusement park. Demetrios assured the unions that their consent would not prejudice the present or future bargaining rights of any party. The Employees Union agreed to the proposal but the Teamsters refused its consent, suggesting instead "discussions" on the subject. Respondent declined the Teamsters' request on the basis that such discussions would constitute nego-

---

* Honorable Walter E. Hoffman, United States Senior District Judge for the Eastern District of Virginia, sitting by designation.

1. Teamsters Local 856, affiliated with International Brotherhood of Teamsters, Warehousemen and Helpers of America.

tiations and would be improper in light of the pending representation proceedings. Respondent reiterated its request that the Teamsters consent to the wage increase. The Teamsters did not respond.

On June 2, 1976, prior to the scheduling of an election date, Demetrios distributed a memorandum to Marine World employees that described his attempts to obtain the unions' consent to a wage increase. The memorandum stated that "[t]he only barrier to putting the new wage rates into effect immediately is the failure of the Teamsters to grant the requested consent." On August 5, the day before the scheduled election, Demetrios issued a second memorandum to the employees that generally criticized the Teamsters' performance as the employees' bargaining representative. Demetrios also accused the Teamsters of holding up the offered wage increase "for the apparent reason that they could not take full credit." The Teamsters did not attempt to controvert the truthfulness of the statements made in either memorandum. Of course, as to the August 5 memo, there was insufficient time, but two months elapsed following the June 2 memo.

In the election held on August 6 and 7, the Teamsters received less than 30% of the votes.[2] The Teamsters filed objections to the election and charged Marine World with committing unfair labor practices. The objections and charges were consolidated and referred to an administrative law judge (ALJ) for a hearing.

In accordance with the finding of the ALJ, the Board, with Member Murphy dissenting, held that respondent violated Section 8(a)(1) of the Act by issuing the memoranda of June 2 and August 5. The Board found that the statements were "calculated to discredit the Teamsters and to discourage membership therein."[3] The Board's decision is reported at 236 N.L.R.B. No. 10 (1978).

Section 8(a)(1) provides that it shall be an unfair labor practice for an employer to interfere with, restrain, or coerce employees in the exercise of their statutory right to engage in or refrain from engaging in concerted activity. 29 U.S.C. §§ 157, 158(a)(1). This provision is modified, however, by section 8(c), 29 U.S.C. § 158(c), which defines and implements the First Amendment right of free speech in the context of labor relations. *N. L. R. B. v. Four Winds Industries,* 530 F.2d 75, 78 (9th Cir. 1976); see *N. L. R. B. v. Gissel Packing Co.,* 395 U.S. 575, 617, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). Section 8(c) permits employers to express "any views, arguments or opinions" concerning union representation without running afoul of section 8(a)(1) if the expression "contains no threat of reprisal or force or promise of benefit." *N. L. R. B. v. Raytheon Company,* 445 F.2d 272, 273 (9th Cir. 1971).

■ Even though the section 8(a)(1) violations in the instant case were based exclusively on the letters issued by Respondent's president, the Board did not consider whether the memoranda were protected by section 8(c). On appeal, the Board argues that section 8(c) protects only non-coercive speech and, as the letters issued by respondent were calculated to discredit the Teamsters and to discourage membership therein, they were coercive and thus, not within the protection of section 8(c). Speech is coercive within the meaning of section 8(c) only if it threatens reprisals or force or promises benefits, not, as the Board suggests, if it is coercive in the context of section 8(a)(1).

---

2. Of 310 eligible voters, 165 cast ballots for the Employees Union, 70 cast ballots for the Teamsters and 8 cast ballots against union representation.

3. The Board dismissed the complaint insofar as it alleged that respondent violated section 8(a)(1) by: (1) surveillance of employees' union activities; (2) promising an employee a wage increase if he would refrain from supporting the Teamsters; and (3) granting a wage increase in December, 1976; and violated section

8(a)(2) by giving aid and assistance to the Employees Union.

Furthermore, the Board unanimously agreed with the ALJ that the letters of June 2 and August 5 constituted objectionable conduct which interfered with a fair and impartial election. The Board therefore set aside the election and ordered a new election. This part of the order is not, and could not be before us. *Hertzka & Knowles v. N. L. R. B.,* 503 F.2d 625, 627 n. 4 (9th Cir. 1974).

■ The broad language of section 8(a)(1) is not the test of whether statements violate the Act. It must first be found that the challenged material contains a threat of force or reprisal or promise of benefit by the employer. *N. L. R. B. v. TRW-Semiconductors, Inc.*, 385 F.2d 753, 759 (9th Cir. 1967). Therefore, unfair labor practices predicated on speech must be scrutinized carefully and unless the speech is coercive— i. e. contains threats or promises—it is privileged. *N. L. R. B. v. Four Winds Industries, Inc.*, 530 F.2d 75, 78 (9th Cir. 1976).

In determining whether questioned statements are permissible under section 8(c), the statements must be considered in the context in which they were made and in view of the totality of the employer's conduct. *N. L. R. B. v. Lenkurt Electric Co.*, 438 F.2d 1102, 1107 (9th Cir. 1971). The court also must recognize the economically dependent relationship of the employees to the employer "and the necessary tendency of the former, because of that relationship, to pick up intended implications of the latter that might be more readily dismissed by a more disinterested ear." *N. L. R. B. v. Gissel Packing Co., supra,* 395 U.S. at 617, 89 S.Ct., at 1942.

■ The statements distributed to the employees by Respondent are critical of the Teamsters, but on their face do not threaten reprisals or force or promise benefits depending on the outcome of the election. However, whether there are implied threats or promises in the letters is a question that must be resolved by the Board. "[A] reviewing court must recognize the Board's competence in the first instance to judge the impact of utterances made in the context of the employer-employee relationship." *N. L. R. B. v. Gissel Packing Co., supra,* at 620, 89 S.Ct., at 1943; see *Labor Board v. Virginia Power Co.*, 314 U.S. 469, 479, 62 S.Ct. 344, 86 L.Ed. 348 (1941); *Conolon Corporation v. N. L. R. B.*, 431 F.2d 324, 327–28 (9th Cir. 1970), *cert. denied,* 401 U.S. 908, 91 S.Ct. 866, 27 L.Ed.2d 806 (1971); *Elastic Stop Nut Corp. v. National Labor Rel. Board,* 142 F.2d 371, 378 (8th Cir. 1944). Accordingly, we remand to the Board for consideration of the applicability of section 8(c), with due regard to any general union hostility on the part of Marine World, especially in light of its past association with Teamsters, and the intended and understood message of the two memoranda with respect to whether they contained a threat of force or retaliation or promise or benefit.

REMANDED.