**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**OMI GEORGIA, INCORPORATED, Respondent.**

**No. 81–7976.**

United States Court of Appeals, Eleventh Circuit.

May 31, 1983.

---

Elliott Moore, Jolane Findley, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., for petitioner.

Page, Scrantom, Harris, McGlamry & Chapman, Mark Youmans, Columbus, Ga., for respondent.

Before RONEY and CLARK, Circuit Judges, and TUTTLE, Senior Circuit Judge.

PER CURIAM:

The National Labor Relations Board comes before this court seeking enforcement of its order directing OMI, Georgia, Incorporated to bargain collectively with International Molders and Allied Workers Union, AFL–CIO, Local 324, to cease and desist certain unlawful practices and to post an appropriate notice. Because we find the order appropriate under the circumstances, we grant enforcement.

On November 14, 1979, the union petitioned the National Labor Relations Board for certification as collective bargaining representative of the employees at employer's Columbus, Georgia plant. A direction of election was made and an election to determine representation was held in the appropriate employee unit on January 11, 1980. The union won the election and the employer filed timely objections, maintaining that a general atmosphere of fear and violence prevailed during the election period. An investigation was held and the Regional Director issued his supplemental decision and certification of representation. The Board granted the employer's request for review of the Regional Director's supplemental decision, stayed the certification, and remanded to the Regional Director for a hearing. A hearing was held on October 2, 1980 and a hearing officer recommended that the election be set aside. The Board issued a supplemental decision adopting the recommendation of the hearing officer.

A second election was scheduled for January 9, 1981. Again, the union won the election and the employer filed timely objections including objections that the union distributed misrepresentative campaign propaganda inferring negative Board action toward OMI and that the Regional Director

erred in scheduling the second election before the coercive atmosphere of the first election had dissipated. An investigation was held and the Regional Director issued his second supplemental decision and certification of representation, finding that the campaign leaflet did not mandate a new election and that no evidence of renewed threats or acts of vandalism were presented by the employer.

Subsequent to the Board's denial of the employer's request for review of this second supplemental decision and certification of representation, the Regional Director issued a complaint alleging that the employer continually refused to bargain with the union although bargaining had been requested. A hearing was set before an administrative law judge and the employer filed an answer admitting and denying in part the Regional Director's complaint. The General Counsel then issued a motion to transfer the case to and continue proceeding before the Board and for summary judgment because no issues of fact or law requiring a hearing were present.

The Board then issued an order transferring the proceeding to the Board and a notice to show cause why the General Counsel's motion for summary judgment should not be granted. The employer filed a response to the notice to show cause. The Board granted General Counsel's motion for summary judgment and invoked the aforementioned remedies.

■ The critical issue in this case is whether the employer's objection to the union's distribution of a campaign leaflet containing alleged misrepresentations raises substantial and material issues sufficient to constitute grounds for setting aside the second election. The leaflet in question, distributed four or five days prior to the election, stated that OMI had fired several employees, the union had filed charges with the federal government, and OMI "was forced to" reinstate two of the employees and pay them back wages.[1] In fact, the back pay was paid pursuant to a settlement agreement with a nonadmissions clause and the two employees were reinstated prior to the settlement. OMI contends that the leaflet misrepresented the Board's processes, documents, and litigation matters and thus justifies a new election pursuant to Board decisions such as *Formco, Inc.,* 233 N.L.R.B. No. 5 (1977), and its progeny. The Board argues that although the leaflet was perhaps not as specific as OMI would have preferred, the alleged misrepresentation did not fall within the *Formco* line of cases because it was not so substantial as to inject the Board into the campaign and create the impression that the Board favored one party over another.

---

1. The leaflet read:

*GET A CLEAR PICTURE*
THE COMPANY AND THEIR HIGH–PRICED LAWYER HAVE BEEN TRYING VERY HARD TO KEEP YOU AND YOUR FELLOW WORKERS FROM EXERCISING THE RIGHTS YOU HAVE UNDER FEDERAL LAW TO OBTAIN YOUR UNION. THIS IS THE SAME COMPANY THAT FIRED THE FOLLOWING EMPLOYEES AND HAD NO FEELING FOR THE WELFARE OF THEIR FAMILIES. *CONNIE GILCHRIST GAIL BULLARD MOSE NEAL WAYNE SCARBROUGH CHARLIE SELDON HAROLD THEDFORD.* THIS HAPPENED JUST BEFORE CHRISTMAS 1979. THE UNION FILED CHARGES WITH THE FEDERAL GOVENMENT [sic] AND THESE EMPLOYEES COLLECTED OVER *TWELVE THOUSAND DOLLARS* $12,000.00 IN BACK PAY FROM OMI. OMI WAS FORCED TO PUT *WAYNE SCARBROUGH* AND *MOSE NEAL* TO WORK AND PAY THEM THE WAGES THEY LOST WHILE THEY WERE OFF. BEFORE THE UNION CAME AROUND, YOU DID NOT RECEIVE THE $15.00 FOR YOUR BIRTHDAY, THE TWO HOLIDAYS, DIFFERANT [sic] INSURANCE AND DRUG POLICY, THE TURKEY PLUS THE $35.00 AT CHRISTMAS AND THERE WERE NO CHRISTMAS PARTIES. *HOW MANY OTHER BENEFITS WILL WE BE ABLE TO NEGOTIATE WHEN YOU GET YOUR UNION???* WHAT HAPPENS IF YOU ARE ABSENT SIX DAYS OR LATE TWELVE (12) TIMES A YEAR WHEN YOU DON'T HAVE A UNION? *YOU COULD LOSE YOUR JOB. DON'T BE MISLED BY THE HIGH–PRICED LAWYER WHO THE COMPANY IS PAYING THOUSANDS OF DOLLARS TO KEEP YOU FROM GETTING YOUR UNION.* [Emphasis in original.]

The Board in *Formco, Inc.* set aside an election where the union distributed a leaflet stating that management had been found guilty of engaging in an unfair labor practice and was ordered to post a notice. The facts showed that the merits of the unfair labor practice allegations were never litigated since a settlement agreement containing a nonadmissions clause was entered into by the parties. *Formco* thus was an exception to the then-existing general rule that the Board would not probe into the truthfulness of campaign statements nor set aside elections on the basis of misleading campaign statements absent forgery or alteration of a Board document such that it appeared that the Board actually *authored* the document.[2] *Shopping Kart*, 228 N.L.R.B. 1311 (1977). The reasoning underlying the *Formco* exception was that just as in the alteration of document case, when one party injects the Board and its processes into the campaign, the neutrality of the Board is impaired, the only credible response can come from the Board, and the Board is unable to intervene in an election campaign to set the record straight.[3]

In *Gulton Industries-Fenco Division*, 240 N.L.R.B. No. 73 (1979), the Board set aside an election where several leaflets were distributed by the union, one of which stated, incorrectly, that the employer had "committed serious violations of the National Labor Relations Act." The Board found that this "impermissibly implicated" the Board and its processes in a partisan election campaign. *Id.*

In the instant case, the leaflet merely stated that the employer was "forced to" reinstate two employees with back pay. The Board found that the alleged misrepresentation was not substantial so as to warrant setting aside the election. We agree

and find that the Board has discretion in determining whether its good offices were abused by use or implication of its name or authority in the leaflet.

 We find no merit to OMI's argument that the scheduling of the second election was such as to constitute grounds for setting aside the election. The employer presented no evidence of a continued atmosphere of fear and violence. Consequently, the employer is required to comply with the Board's order.

ENFORCEMENT GRANTED.

---

**2.** This exception for Board documents was necessitated by the need to avoid an indication of endorsement by the Board of a party to the election, thus rendering the voters unable to recognize campaign propaganda for what it was. The general rule regarding factual misrepresentations in election campaigns has vacillated between the hands-off policy of *Shopping Kart* and a hands-on policy enunciated in *Hollywood Ceramics*, 140 N.L.R.B. 221 (1962).

This chameleon-like rule apparently takes on the "color" of the Board membership. For a history of the rule, see *Midland National Life Insurance Company*, 263 N.L.R.B. No. 24 (1982).

**3.** *See generally Dubie-Clark Company, Inc.*, 209 N.L.R.B. 217 (1974) (misrepresentation of Board processes compared to alteration of Board documents).