## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## DPM OF KANSAS, INC., Respondent.

No. 83–1542.

United States Court of Appeals, Tenth Circuit.

Sept. 24, 1984.

Ralph C. Simpson, Atty., Washington, D.C. (Helen L. Morgan, Atty., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel, and Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., Washington, D.C., with him on the brief), for petitioner.

William H. Bruckner of Alaniz, Bruckner & Sykes, Houston, Tex., for respondent.

Before McKAY, BREITENSTEIN and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

The National Labor Relations Board seeks enforcement of its decision and order which found that DPM of Kansas, Inc. had engaged in unfair labor practices within the meaning of Section 8(a)(5) and (1) of the National Labor Relations Act by refusing to bargain with the United Food and Commercial Workers International Union, AFL–CIO–CLC, District Local 340 ("the Union"). In the unfair labor practices proceeding, DPM neither admitted nor denied that it had refused to oargain with the Union. The Board, however, found that DPM had in fact declined to bargain with the Union and directed the Company to do so. We agree with the Board, and accordingly enforce its order.

DPM is a company engaged in the processing and nonretail sale of meat at facilities located in Wichita, Kansas. On April 27, 1979, the Union filed a petition seeking to represent all production and maintenance employees employed by DPM. The Union and DPM entered into a Stipulation for Certification Upon Consent Election agreement and an election was held June 15, 1979. Fifty-eight ballots were cast for the Union and sixty-one votes against it. The Union filed timely objections to the election, alleging, among other things, that DPM had interfered with the election by announcing and implementing an unscheduled attendance bonus shortly before the election and by adjusting an employee's vacation time, which adjustment previously had been denied. The Regional Director conducted an administrative investigation of the Union's objections, giving the parties the opportunity to submit pertinent evidence. In his report, the Regional Director recommended that the Union's objections be sustained and that the Board direct the holding of a second election. DPM made exceptions to the Director's report, but the Board adopted its recommendations and ordered a second election.

The second election resulted in sixty-one votes in favor of the Union and forty-one votes against the Union. Thereafter, DPM filed timely objections to the results of the second election, claiming: 1) the Union had made misrepresentations regarding the Board's decision to hold a second election; 2) the Union president misrepresented the difference between the wages presently paid DPM employees vis-a-vis wages paid by unionized competitors, as well as wages presently paid DPM employees vis-a-vis wages previously paid by DPM at a time when it was unionized, and 3) the notice of

election and ballots listed the Company's previous name, Sunflower Beef, Inc., instead of the Company's current name, DPM of Kansas, Inc.

Again, the Acting Regional Director conducted an investigation of the Company's objections to the results of the second election at which time the parties were given the opportunity to submit any pertinent evidence. Applying the then current standard for setting aside an election, *Hollywood Ceramics Co.*, 140 NLRB 221 (1962), the Director found that any misstatement of fact was not substantial and that the employees possessed the means to evaluate the statements. Therefore, the Director overruled DPM's objections. The Board adopted the Director's report and certified the Union.

As indicated, the Company declined to bargain with the Union, as the Union requested, and a complaint was filed charging DPM with unfair labor practices. Both the general counsel and the Company filed motions for summary judgment with the Board. The Company argued that the matter should be remanded for a hearing with regard to the conduct surrounding both elections. The Board granted the general counsel's motion and found DPM in violation of section 8(a)(5) and (1) of the National Labor Relations Act and ordered it to bargain with the Union.

As we see it, the issues in the present proceeding are whether the Board abused its discretion in setting aside the first election and in refusing to set aside the second election, and the related issue of whether DPM was denied procedural due process when the Board declined to hold full, adversarial hearings on each of these election contests. We find no such abuse of discretion, nor do we find any denial of due process. On that basis, we enforce.

■ With respect to the Union's objections to the first election, the law is clear

that economic benefits granted by an employer to its employees shortly before a union election are suspect as an intentional attempt by the employer to influence the outcome of the election. *N.L.R.B. v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 460, 11 L.Ed.2d 435 (1964) ("The danger inherent in well-timed increases in benefits is the suggestion of a fist inside a velvet glove."); *N.L.R.B. v. Montgomery Ward & Co., Inc.*, 554 F.2d 996, 1000–001 (10th Cir.1977), *J.C. Penney Co. v. N.L.R.B.*, 384 F.2d 479 (10th Cir.1967); *Crown Tar and Chemical Works, Inc. v. N.L.R.B.*, 365 F.2d 588, 590 (10th Cir.1966). DPM recognizes this, but adds that an employer cannot be expected to remain static during an organizational campaign. Relying upon *Simpson Electric Co. v. N.L.R.B.*, 654 F.2d 15 (7th Cir.1981), DPM argues that it was not required to defer the implementation of its plan for an absentee program until after the election. The Regional Director, however, found that DPM had departed from its plan of sequentially announced benefits every six to eight weeks. The timing of announcing two new benefits eleven days before the election suggested to the Director an unlawful motive of attempting to influence the election. We note that the dispute is not over what occurred, but over the inferences and legal conclusions to be drawn therefrom. Under the described circumstances, we hold that the Board did not abuse its discretion in upholding the Union's objections and ordering a second election.

■ The Union won the second election and the Company filed election objections.[1] The Regional Director investigated these claims of election irregularity and, we are advised, afforded the parties opportunity to submit pertinent evidence. The Regional Director, and eventually the Board, rejected these objections on the basis of Hollywood Ceramics, 140 N.L.R.B. 221 (1962). Subsequently, the Board overruled *Holly-*

---

**1.** As stated, one of the Company's objections was that the notice of election and ballots listed the Company's former name, Sunflower Beef, Inc., instead of the Company's current name, DPM of Kansas, Inc. This name change was effected only three months before the election, and there is no indication that the election notices and ballots in any manner confused employees. The Board acted properly in rejecting this argument.

*wood Ceramics* and adopted the rule that elections will not be set aside because of misleading campaign statements, absent the use of forged documents or the alteration of an official Board document in a manner suggesting that the Board favors one of the parties. Midland National Life Insurance Co., 263 N.L.R.B. 127 (1982). The Board determined that this new rule should be applied to "all pending cases in whatever stage." *Id.* at 133 n. 24. Because the alleged misrepresentations do not involve forgery or alteration of an official Board document, we hold that the Board did not abuse its discretion in refusing to set aside the election.[2]

 The Company also complains that the objections to both the first and second elections should not have been disposed of by purely administrative action, but that the Regional Director should have held an evidentiary hearing after both elections. We do not agree. A party objecting to a Board-conducted election is entitled to a hearing on its election objections "only if it 'shows by *prima facie* evidence the existence of substantial and material factual disputes which if resolved in its favor would require the setting aside of the election.'" *Crown Cork & Seal Co., Inc. v. N.L.R.B.*, 659 F.2d 127, 129 (10th Cir.1981), *cert. denied,* 454 U.S. 1150, 102 S.Ct. 1016, 71 L.Ed.2d 304 (1982) (quoting *N.L.R.B. v. Whitney Museum of American Art,* 636 F.2d 19, 23 (2d Cir.1980)). DPM did not proffer any specific evidence relating to a factual dispute, rather the Company quarreled with the legal conclusions of the Acting Regional Director. It is our view that the Acting Regional Director acted properly in refusing to hold an evidentiary hearing. *See N.L.R.B. v. Gold Spot Dairy, Inc.,* 432 F.2d 125, 128 (10th Cir.1970).

Order enforced.

**2.** The Company relies upon *Mosey Manufacturing Co. v. N.L.R.B.* 701 F.2d 610 (7th Cir.1983) (en banc) for the proposition that we should not apply *Midland* retroactively. We find that the instant case does not involve the same equities which persuaded the Seventh Circuit to refuse to apply *Midland* retroactively. We further note that the Seventh Circuit subsequently concluded *Midland* should be applied retroactively. *N.L.*

*R.B. v. Milwaukee Brush Manufacturing Co.,* 705 F.2d 257 (7th Cir.1983). Other Circuits are in accord. *See N.L.R.B. v. Monark Boat Co.,* 713 F.2d 355 (8th Cir.1983); *N.L.R.B. v. Yellow Transportation Co.,* 709 F.2d 1342 (9th Cir.1983) (per curiam); *N.L.R.B. v. OMI Georgia, Inc.,* 707 F.2d 453 (11th Cir.1983); *N.L.R.B. v. Rolligon Corp.,* 702 F.2d 589 (5th Cir.1983).