## NATIONAL LABOR RELATIONS BOARD *v.* EXCHANGE PARTS CO.

No. 26. Argued December 11, 1963.—Decided January 13, 1964.

*Dominick L. Manoli* argued the cause for petitioner. With him on the brief were *Solicitor General Cox, Arnold Ordman* and *Norton J. Come.*

*Karl H. Mueller* argued the cause and filed a brief for respondent.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case presents a question concerning the limitations which § 8 (a)(1) of the National Labor Relations Act, 49 Stat. 452 (1935), as amended, 29 U. S. C. § 158 (a)(1), places on the right of an employer to confer economic

benefits on his employees shortly before a representation election. The precise issue is whether that section prohibits the conferral of such benefits, without more, where the employer's purpose is to affect the outcome of the election. We granted the National Labor Relations Board's petition for certiorari, 373 U. S. 931, to clear up a possible conflict between the decision below and those of other Courts of Appeals [1] on an important question of national labor policy. For reasons given in this opinion, we conclude that the judgment below must be reversed.

The respondent, Exchange Parts Company, is engaged in the business of rebuilding automobile parts in Fort Worth, Texas. Prior to November 1959 its employees were not represented by a union. On November 9, 1959, the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO, advised Exchange Parts that the union was conducting an organizational campaign at the plant and that a majority of the employees had designated the union as their bargaining representative. On November 16 the union petitioned the Labor Board for a representation election. The Board conducted a hearing on December 29, and on February 19, 1960, issued an order directing that an election be held. The election was held on March 18, 1960.

At two meetings on November 4 and 5, 1959, C. V. McDonald, the Vice-President and General Manager of Exchange Parts, announced to the employees that their "floating holiday" in 1959 would fall on December 26 and that there would be an additional "floating holiday" in 1960. On February 25, six days after the Board issued its election order, Exchange Parts held a dinner for employees at which Vice-President McDonald told the em-

---

[1] See, e. g., *Indiana Metal Products Corp.* v. *Labor Board,* 202 F. 2d 613 (C. A. 7th Cir.); *Labor Board* v. *Pyne Molding Corp.,* 226 F. 2d 818 (C. A. 2d Cir.).

ployees that they could decide whether the extra day of vacation in 1960 would be a "floating holiday" or would be taken on their birthdays. The employees voted for the latter. McDonald also referred to the forthcoming representation election as one in which, in the words of the trial examiner, the employees would "determine whether . . . [they] wished to hand over their right to speak and act for themselves." He stated that the union had distorted some of the facts and pointed out the benefits obtained by the employees without a union. He urged all the employees to vote in the election.

On March 4 Exchange Parts sent its employees a letter which spoke of "the *Empty Promises* of the Union" and "the *fact* that *it is the Company that puts things in your envelope* . . . ." After mentioning a number of benefits, the letter said: "The Union can't put any of those things in your envelope—*only the Company can do that.*" [2] Further on, the letter stated: ". . . [I]t didn't take a Union to get any of those things and . . . it won't take a Union to get additional improvements in the future." Accompanying the letter was a detailed statement of the benefits granted by the company since 1949 and an estimate of the monetary value of such benefits to the employees. Included in the statement of benefits for 1960 were the birthday holiday, a new system for computing overtime during holiday weeks which had the effect of increasing wages for those weeks, and a new vacation schedule which enabled employees to extend their vacations by sandwiching them between two weekends. Although Exchange Parts asserts that the policy behind the latter two benefits was established earlier, it is clear that the letter of March 4 was the first general announcement of the changes to the employees. In the ensuing election the union lost.

---

[2] The italics appear in the original letter.

The Board, affirming the findings of the trial examiner, found that the announcement of the birthday holiday and the grant and announcement of overtime and vacation benefits were arranged by Exchange Parts with the intention of inducing the employees to vote against the union. It found that this conduct violated § 8 (a)(1) of the National Labor Relations Act and issued an appropriate order. On the Board's petition for enforcement of the order, the Court of Appeals rejected the finding that the announcement of the birthday holiday was timed to influence the outcome of the election. It accepted the Board's findings with respect to the overtime and vacation benefits, and the propriety of those findings is not in controversy here. However, noting that "the benefits were put into effect unconditionally on a permanent basis, and no one has suggested that there was any implication the benefits would be withdrawn if the workers voted for the union," 304 F. 2d 368, 375, the court denied enforcement of the Board's order. It believed that it was not an unfair labor practice under § 8 (a)(1) for an employer to grant benefits to its employees in these circumstances.

Section 8 (a)(1) makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 7." Section 7 provides:

"Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all of such activities except to the extent that such right may be affected by an agreement requiring membership in a labor organization as a condition of employment as authorized in section 8 (a)(3)." 49 Stat. 452 (1935), as amended, 29 U. S. C. § 157.

We think the Court of Appeals was mistaken in concluding that the conferral of employee benefits while a representation election is pending, for the purpose of inducing employees to vote against the union, does not "interfere with" the protected right to organize.

The broad purpose of § 8 (a)(1) is to establish "the right of employees to organize for mutual aid without employer interference." *Republic Aviation Corp.* v. *Labor Board,* 324 U. S. 793, 798. We have no doubt that it prohibits not only intrusive threats and promises but also conduct immediately favorable to employees which is undertaken with the express purpose of impinging upon their freedom of choice for or against unionization and is reasonably calculated to have that effect. In *Medo Photo Supply Corp.* v. *Labor Board,* 321 U. S. 678, 686, this Court said: "The action of employees with respect to the choice of their bargaining agents may be induced by favors bestowed by the employer as well as by his threats or domination." Although in that case there was already a designated bargaining agent and the offer of "favors" was in response to a suggestion of the employees that they would leave the union if favors were bestowed, the principles which dictated the result there are fully applicable here. The danger inherent in well-timed increases in benefits is the suggestion of a fist inside the velvet glove. Employees are not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged.[3] The danger may be diminished if,

---

[3] The inference was made almost explicit in Exchange Parts' letter to its employees of March 4, already quoted, which said: "The Union can't put any of those . . . [benefits] in your envelope—*only the Company can do that."* (Original italics.) We place no reliance, however, on these or other words of the respondent dissociated from its conduct. Section 8 (c) of the Act, 61 Stat. 142 (1947), 29 U. S. C. § 158 (c), provides that the expression or dissemination of "any

as in this case, the benefits are conferred permanently and unconditionally. But the absence of conditions or threats pertaining to the particular benefits conferred would be of controlling significance only if it could be presumed that no question of additional benefits or renegotiation of existing benefits would arise in the future; and, of course, no such presumption is tenable.

Other Courts of Appeals have found a violation of § 8 (a)(1) in the kind of conduct involved here. See, e. g., Labor Board v. Pyne Molding Corp., supra; Indiana Metal Products Corp. v. Labor Board, supra. It is true, as the court below pointed out, that in most cases of this kind the increase in benefits could be regarded as "one part of an overall program of interference and restraint by the employer," 304 F. 2d, at 372, and that in this case the questioned conduct stood in isolation. Other unlawful conduct may often be an indication of the motive behind a grant of benefits while an election is pending, and to that extent it is relevant to the legality of the grant; but when as here the motive is otherwise established, an employer is not free to violate § 8 (a)(1) by conferring benefits simply because it refrains from other, more obvious violations. We cannot agree with the Court of Appeals that enforcement of the Board's order will have the "ironic" result of "discouraging benefits for labor." 304 F. 2d, at 376. The beneficence of an employer is likely to be ephemeral if prompted by a threat of unionization which is subsequently removed. Insulating the right of collective organization from calculated good will of this sort deprives employees of little that has lasting value.

*Reversed.*

---

views, argument, or opinion" "shall not constitute or be evidence of an unfair labor practice under any of the provisions of this Act, if such expression contains no threat of reprisal or force or promise of benefit."