**SNYDER TANK CORPORATION,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent,**
and

**International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, Intervenor.**

Nos. 841, 842, Dockets 33943, 34094.

United States Court of Appeals, Second Circuit.

Argued June 3, 1970.

Decided July 1, 1970.

William K. Bennett, Leo P. Carroll, Ansonia, Conn. (Bennett & Kapusta, Ansonia, Conn., on the brief), for petitioner.

Allen H. Feldman, N. L. R. B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate

Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Nancy M. Sherman, Madge F. Jefferson, Washington, D. C., on the brief), for respondent.

Benjamin Rubenstein, New York City, for intervenor.

Before LUMBARD, Chief Judge, and SMITH and KAUFMAN, Circuit Judges.

PER CURIAM:

Snyder Tank Corporation petitions for review of a bargaining order issued against it, while the National Labor Relations Board applies for enforcement. The affected union, the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO, intervened on the side of the NLRB.

The facts, as found by the NLRB, follow a pattern manifest in many similar controversies: an organization campaign, a putative authorization card majority, alleged unfair labor practices by the company, a company victory in a representation election, and a bargaining order from the NLRB. In September, 1966, the intervenor union (the UAW), began an organization drive among the Snyder employees. As a part of its campaign, the union solicited authorization cards. The wording on the cards was clear and precise; it simply designated the union as the employee's "representative for the purpose of collective bargaining." [1] As the cards were circulating among the employees, union meetings were held, and several supervisors interrogated various employees about their feelings towards the union. The supervisors also suggested that the advent of the union would mean harsher working conditions and strained relations between employees and supervisory personnel.

By October 7, 1966, the union had received authorization cards from over half the employees, and wrote to the company demanding recognition. At the same time the union filed a representation petition with the Board. The company refused to bargain, stating that it doubted that the union had been "voluntarily designated by an uncoerced majority."

While the Board was conducting representation hearings in October and November, the company continued to express opposition to the union. Some employees were told again that working conditions would be more difficult if the union were to win; others were informed that they might be laid off for lack of seniority or failure to pass physical examinations. Douglas Gravelle, an employee with an excellent work record, who had been primarily responsible for initiating the union organization drive, was discharged for a minor violation of company work rules, despite an absence of any indication that other employees had been released for similar first infractions.

As the January 19, 1967 election approached, interrogation and thinly veiled threats continued. The president of the company sent a letter to all employees, referring to other companies that had gone out of business as a result of unionization. Although disclaiming any threat that Snyder would do so if it continued to make a reasonable profit, a later memorandum informed the employees that the usual yearly wage increases were being held up for fear that the raises might be held an unfair labor practice by the Board. Similar remarks were made in a speech by the company president the day before the election. The union lost the election, and filed unfair labor practice charges within the week.

---

1. After the heading "Authorization Card," and the union's name, the card read:
   "I, the undersigned, hereby designate, select and empower the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America (UAW, AFL-CIO) as my representative for the purpose of collective bargaining in respect to rate of pay, wages, hours of employment and other conditions of employment."

■ The Board found that the company violated section 8(a) (1) of the National Labor Relations Act[2] by interrogating the employees coercively, by issuing barely disguised threats of closing the plant, by warning of more onerous working conditions if the union won, and by promising benefits if the employees rejected the union overtures. These factual findings, supported by substantial evidence outlined above, are sufficient to warrant the Board's conclusion that the company violated § 8(a) (1). See, e. g., NLRB v. Gissel Packing Co., 395 U.S. 575, 618–620, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969) (plant closure threat); NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed. 2d 435 (1964) (promise of benefit); Federation of Union Representatives v. NLRB, 339 F.2d 126, 129–130 (2d Cir. 1964) (suspension of automatic benefits); NLRB v. Milco, Inc., 388 F.2d 133 (2d Cir. 1968) (coercive interrogation).

■ Similarly, substantial evidence supports the Board's conclusion that Gravelle was discharged not for violation of work rules (since the company could cite no other instance in which a firing took place for a first offense), but because of the leading role that he took in assisting the union organization drive. Discriminatory firings violate §§ 8(a) (3) and 8(a) (1), and warrant the reinstatement ordered here. See Textile Workers Union of America v. Darlington Mfg. Co., 380 U.S. 263, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965); NLRB v. Dorn's Transportation Co., 405 F.2d 706, 712–713 (2d Cir. 1969).

■ Finally, the company challenges the propriety of the bargaining order which was issued in this case. It is now well settled that when a union has obtained a valid authorization card majority, and the company's subsequent conduct makes a fair election impossible, the Board may order the company to bargain with the union despite the union's loss of an intervening representation election. See NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). The union obtained authorization cards from 80 of the 151 employees, and the company, in order to defeat the bargaining order, seeks to demonstrate that at least four of the cards are invalid. Primary reliance is placed on alleged misrepresentations made to the employees as they signed. We must adhere to the rule that:

> " * * * employees should be bound by the clear language of what they sign unless that language is deliberately and clearly canceled by a union adherent with words calculated to direct the signer to disregard and forget the language above his signature." NLRB v. Gissel Packing Co., 395 U.S. at 606, 89 S.Ct. at 1936.

The cards were clear on their face; and the trial examiner and the Board resolved what conflicting testimony there was against the company. We cannot invalidate a sufficient number of the cards to dissipate the majority without engaging in the forbidden practice of probing "an employee's subjective motivations." *Id.* at 608, 89 S.Ct. 1918. We find the company's attack on the remaining cards, and on the fairness of the hearing before the trial examiner, equally unconvincing.

The section 8(a) (1) and 8(a) (3) violations discussed above provide sufficient support for the Board's conclu-

2. "§ 158. Unfair labor practices
    (a) It shall be an unfair labor practice for an employer—
      (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
        * * * * *
      (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization
        * * *;
        * * * * *
      (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title." National Labor Relations Act, ch. 372, § 8, 49 Stat. 452 (1935), as amended, 29 U.S.C. § 158.

sion that the company violated section 8(a) (5) by refusing to recognize the union and by engaging in a concerted anti-union campaign that made the holding of a fair election unlikely and undermined the union's majority. Based on that finding, the Board had the power to issue a bargaining order. NLRB v. Gissel Packing Co., 395 U.S. at 610, 89 S.Ct. 1918.

The petition for review is denied, and the petition for enforcement is granted.