**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

**v.**

**George H. GENTITHES et al., Respondents.**

**No. 71-1373.**

United States Court of Appeals, Third Circuit.

Argued Dec. 2, 1971.

Decided June 27, 1972.

Michael Winer, National Labor Relations Board, Washington, D. C., for petitioner.

Robert S. Meermans, Evans, Gentithest & Meermans, Warren, Ohio, for respondents.

Before SEITZ, Chief Judge, and KALODNER and GIBBONS, Circuit Judges.

## OPINION OF THE COURT

SEITZ, Chief Judge.

The National Labor Relations Board ("the Board") seeks enforcement against defendants of a cease and desist order issued August 4, 1970.

### The Facts

Defendants operate an automobile dealership ("the Company"). As of 1968, their service personnel were not unionized. In the summer of that year union organizational activities were initiated by representatives of the International Association of Machinists and Aerospace Workers, District Lodge No. 63, AFL–CIO ("the Union"). Aiding these representatives were two Company employees named Thomas Richmond and Louis Vore.

The Union's efforts resulted in an election being ordered held in the spring of 1969. The election produced a tie vote and, consequently, unionization was defeated. Organizational efforts predictably subsided thereafter. However, Richmond and the Union representatives did maintain a subdued campaign in an attempt to kindle interest for another election. During this period defendant Hagan, as general manager of the Company, disclosed to employees a proposed package of employee benefits. He also

announced a scheduled dinner meeting of service personnel. The purpose of the meeting was to permit representatives from General Motors to discuss changes appearing on the new models about to be released.

All service employees were invited to attend the dinner. Neither the initial announcement nor subsequent reminders suggested that those electing not to attend would face any disciplinary measures. Richmond and Vore were the only service personnel who did not attend. Several days after the dinner was held both were informed that they had been indefinitely laid off. "Lack of cooperation" was cited as the official cause for their dismissal, although their failure to attend the dinner was pointed out when specific reasons were requested.

### The Complaint and Order

Following dismissal of Richmond and Vore the Union filed charges with the Board against the Company. These charges were reviewed by General Counsel who then prepared a complaint alleging that defendants had committed unfair labor practices in violation of the National Labor Relations Act ("the Act"), 29 U.S.C. § 151 et seq. Specifically, the Company was charged with violating §§ 8(a) (1) and 8(a) (3) of the Act, 29 U.S.C. §§ 158(a) (1), (a) (3), in the following respects:

(1) having announced, and then granted, economic benefits to employees to dissuade them from joining, supporting or assisting the Union in its organizational efforts;

(2) having attempted to convince employees of the futility of joining, supporting or assisting the Union; and

(3) having discriminatorily discharged employees Richmond and Vore because they were members of or engaged in activities on behalf of the Union, or in other protected activities, or both.

The trial examiner concluded that only charge (3) was supported by the record. Accordingly, his proposed order was limited to reinstatement of Richmond and Vore and enjoining further unfair labor practices by the Company involving the discharge of employees actively seeking representation by the Union or any other labor organization. The Board adopted the examiner's recommendations. However, it concluded, in addition, that the record supported charges (1) and (2). Thus, the order sought here to be enforced is an expanded version of that proposed by the trial examiner. As it now reads the order would require that the Company:

(1) Cease and desist from discouraging membership in the Union or any other labor organization by:

(a) promising or instituting economic benefits, including free health insurance, uniforms, guaranteed wages, and vacation; and

(b) discharging employees or otherwise discriminating in any manner as to such employees' tenure or other employment conditions.

(2) Offer Richmond and Vore immediate and full reinstatement to their former positions or jobs equivalent thereto, and compensate both to the extent of pay lost by each as a result of discharge, including interest on the amount due at a rate of 6 per cent.

(a) *Economic benefits*

In N L R B v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964), the Supreme Court held that an employer violates § 8(a) (1) of the Act by promising or granting economic benefits, prior to a scheduled representation election, for the express or implied purpose of discouraging collective employee activities. This principle has recently been extended by at least one court to post-election circumstances. *See* Luxuray of New York v. N L R B, 447 F.2d 112 (2d Cir. 1971). Without deciding the propriety of such an extension we conclude that there is

not substantial evidence in the record before us to support the Board's finding that the Company, in announcing the proposed benefit program, was attempting to discourage membership in the Union or any other labor organization. *Cf.* Universal Camera Corp. v. N L R B, 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

Defendant Hagan first announced the proposed program more than two months after unionization had been defeated by the tie-vote election. And, the benefits were not to become completely effective until almost another three months had elapsed. Cf. Luxuray of New York v. N L R B, 447 F.2d at 118 (benefit program announced the day following the election). At the time of the announcement unionization efforts were demonstrably curtailed. Indeed, the only nexus between disclosure of the proposed benefits and unionization, apparent beyond mere speculation, was the series of comparisons made by Hagan in his announcement between the Company's program and those of a nearby competitor as well as those promised by the Union during its earlier campaign. We are unable to hold, faced with these inconclusive facts, that the Company's announcement was designed to undermine whatever organizational activities then persisted among the employees. The comparisons appear to be nothing more than a reasonable attempt by the Company, by the use of examples familiar to its employees, to emphasize the merits of its program.

**(b)** *Expressions of antiunion sentiment*

 During discussions with the employees throughout the months following the Union's election defeat, Company management infrequently acknowledged its opposition to unionization. Defendant Hagan, in particular, was unequivocal in stating that he was "anti union, naturally." The complaint asserted that such remarks by management were designed to demonstrate to the employees the futility of any attempt seeking to establish a bargaining representative. And, despite a finding to the contrary by the trial examiner, the Board agreed with this assertion. We cannot accept the Board's conclusion. For it remains that no interpretation of the limited number of such remarks appearing in the record suggests a coercive attempt by the Company to impose upon its employees its own aversion to unionization. As noted by the trial examiner the occasional statements attributed to Hagan are devoid of any indication that they were intended as threats directed toward those employees involved in the continuing campaign of the Union. Cf. N L R B v. Howard Quarries, 362 F.2d 236, 239–240 (8th Cir. 1966). Absent a coercive character the statements cannot be considered violative of § 8(a) (1) of the Act.

**(c)** *Discharge of Richmond and Vore*

 Although there might exist a justifiable cause for discharge of an employee, there is a violation of the Act if the real motive for the discharge is found to be the employer's dislike of union activity or affiliation. *See* N L R B v. Challenge-Cook Bros., 374 F.2d 147, 152 (6th Cir. 1967). Such real motive will be found where union activity by the employee is recognized as a substantial or motivating cause of his discharge. See N L R B v. Mid-West Towel & Linen Service, 339 F.2d 958, 962 (7th Cir. 1964); N L R B v. Symons Mfg. Co., 328 F.2d 835, 837 (7th Cir. 1964). Assuming without deciding that nonattendance at the announced dinner meeting would have been sufficient cause to sustain the dismissal of Richmond and Vore, nevertheless, we conclude that the record as a whole substantially supports the Board's finding that a motivating reason for the discharge of these employees was the Company's awareness of their union activities. Therefore, the Board was correct to the extent that it found the Company

guilty of violating § 8(a) (3) of the Act.

*Conclusion*

The Board's order will be enforced insofar as it adopts the Recommended Order of the trial examiner.