**GOULD, INC., ELECTRICAL COMPONENTS DIVISION, Petitioner Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent Cross-Petitioner.**

No. 78–2792.

United States Court of Appeals, Fifth Circuit.

Jan. 24, 1980.

---

7. *See* Note, *A Corporation's Principal Place of Business for Federal Diversity Jurisdiction*, 38 N.Y.U.L.Rev. 148, 159 (1963).

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P. A., Peter W. Zinober, John P. McAdams, Tampa, Fla., for petitioner cross-respondent.

Elliott Moore, Deputy Assoc., Gen. Counsel, Kenneth B. Hipp, Deputy Asst. Gen. Counsel, Linda B. Weisel, Atty., Elliott Moore, N. L. R. B., Washington, D. C., for respondent cross-petitioner.

Before MORGAN, RONEY and GARZA, Circuit Judges.

PER CURIAM:

Gould, Inc., Electrical Components Division (Company) petitions this Court for review of an order of the National Labor Relations Board (Board) finding the Company had unlawfully refused to bargain with the International Brotherhood of Electrical Workers, Local Union No. 108, AFL–CIO (Union). The Board, on cross-application, seeks enforcement of its order directing the Company to bargain collectively with the Union. Because the Board did not abuse its discretion when it overruled the Company's objections to a decertification election, we affirm the Board's decision and order enforcement.

Filing timely objections to a second decertification election, which the Union won

by a vote of 52 to 41, the Company alleged the Union had improperly influenced voters when an employee, formerly a Union steward, told approximately eleven employees in the weeks prior to the election that the Union would waive dues arrearages.

In support of its objections the Company submitted affidavits of three employees and a list which purported to show those employees who owed back Union dues. The affidavit of Violet White indicated she had pre-election concern about her dues arrearages. She states that after the election another employee, Betty Mullins, told Ms. White that another employee, Mae McKee, had said in a Union meeting all back dues would be waived.

The affidavit of George Cella, a supervisor, recounts a conversation he had with Violet White after the election. Ms. White told Cella that Betty Mullins told her that Mae McKee said in a Union meeting before the election that all back dues would be waived.

The Company's third affidavit summarizes a post-election conversation between Michael Bagwell, a foreman, and Joan Updike, an employee who worked as a bodine operator. Ms. Updike said Mae McKee made an unsolicited statement before the election that Union dues would be waived.

As part of the investigation the acting regional director of the Board interviewed Mae McKee and Betty Mullins. Mullins stated she told an employee that back dues would be dropped, but the employee would have to rejoin the Union. Mullins also indicated that a representative told employees at a Union meeting in 1976 there were no back dues because employees were dropped from Union membership after six months of nonpayment of dues. Employees were told they could rejoin the Union by paying the initiation fee.

Ms. McKee, a former Union steward, stated that in the weeks prior to the September 1977 rerun election approximately ten employees approached her at work and asked her about back dues. She recalled telling each person individually she did not believe there would be any back dues be-cause the Union had not been there for a year. When an employee called her at home after the election and asked her about back dues, McKee indicated there would be no back dues but employees would have to pay an initiation fee to rejoin the Union.

The acting regional director determined that neither the International Union constitution nor the Local 108 by-laws contain any provision on collection of back dues from delinquent members or nonmembers dropped from the Union for dues arrearages. The Union presented evidence showing that for at least nine years preceding the election the Local Union had followed a practice of requiring initiation fees of all new members, including those dropped from membership. Further, the Union demonstrated it had never sought repayment of back dues from former members who had been dropped from membership for nonpayment of Union dues.

■ It is well established that the burden is on the party seeking to overturn a Board-conducted representation election to establish that the election was not fairly conducted. *NLRB v. Heavy Lift Service, Inc.,* 607 F.2d 1121 (5th Cir. 1979); *NLRB v. Allis-Chalmers Corp.,* 601 F.2d 870, 871–872 (5th Cir. 1979); *NLRB v. Sumter Plywood Corp.,* 535 F.2d 917, 920 (5th Cir. 1976), *cert. denied,* 429 U.S. 1092, 97 S.Ct. 1105, 51 L.Ed.2d 538 (1977). Further, in reviewing objections to an election, the only question presented to the Court is whether the Board has reasonably exercised its discretion. *NLRB v. Allis-Chalmers Corp.,* 601 F.2d 870, 871 (5th Cir. 1979); *NLRB v. Osborn Transportation, Inc.,* 589 F.2d 1275, 1279 (5th Cir. 1979).

■ The Company failed to meet its burden of establishing that the election was impermissibly influenced. Based on largely undisputed facts, the Board found that the Union's longstanding policy has been not to attempt to collect delinquent dues once a member falls six months in arrears. Rather, the Union merely drops the employee from its membership rolls. If the employee desires to rejoin the Union, he is treated as

a new member and required to pay an initiation fee.

In the weeks preceding the election, approximately ten employees approached former Union steward Mae McKee and asked her if the Union was requiring the payment of back dues. Although she was neither an official nor a member of the Union at the time, McKee responded that she did not believe that there would be any back dues. This statement was in accord with the Union's practice and its treatment of the Company's employees. Even though the Company presented a list of employees who had not been checked-off for Union dues, and therefore ostensibly owed dues, the acting regional director could discount this evidence, as he did, because there was no showing whether or not such persons had independently paid their dues directly to the Union.

Although the Company argues a hearing should have been held, the Company failed to supply the Board with specific evidence which *prima facie* would warrant setting aside the election. *NLRB v. Osborn Transportation, Inc.,* 589 F.2d at 1282.

The results of the investigation demonstrate the Board's decision was reasonable and supported by substantial evidence.

A union is entitled to state its dues structure and collection procedures to all employees whether or not they support the union. Since McKee's statement of the Union's policy of waiving back dues was neither conditioned on an employee's support for the Union nor on the outcome of the election, it did not improperly influence the results of the election. The Board properly concluded that McKee's statement did not amount to an announcement of benefit to the former Union members. *Compare Collins & Aikman Corp. v. NLRB,* 383 F.2d 722 (4th Cir. 1967); *Loubella Extendables, Inc.,* 206 N.L.R.B. 183 (1973); *General Cable Corp.,* 170 N.L.R.B. 1682 (1968).

Unlike the grant-of-benefits cases relied upon by the Company, *see Hineline's Meat Plant, Inc.,* 193 N.L.R.B. 867 (1971); *H–P Stores, Inc.,* 197 N.L.R.B. 361 (1972); *Inter-*

*national Shoe Co.,* 123 N.L.R.B. 682, 684 (1959); *Rupp Industries, Inc.,* 217 N.L.R.B. 385 (1975); *NLRB v. Exchange Parts Co.,* 375 U.S. 405, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964), the present case did not involve any change in the benefits available to Union members during an organizational campaign.

The undisputed evidence showed the Union's past practice of not collecting dues more than six months stale, but requiring employees with such arrearages to rejoin the Union as new members.

PETITION FOR REVIEW DENIED.

ORDER ENFORCED.