**BOWLING GREEN–WARREN COUNTY COMMUNITY HOSPITAL CORPORATION, d/b/a The Medical Center at Bowling Green, Kentucky, Petitioner,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

Nos. 84–5206, 84–5321.

United States Court of Appeals, Sixth Circuit.

Cause Argued Jan. 25, 1985.

Decided March 5, 1985.

See also, 6th Cir., 712 F.2d 1091.

Herman L. Allison (argued), Constangy, Brooks & Smith, Atlanta, Ga., for petitioner.

Elliott Moore (argued), Nancy Hunt, Deputy Associate General Counsel, N.L.R.B., Washington, D.C., for respondent.

Before MERRITT and WELLFORD, Circuit Judges, and HILLMAN, District Judge.*

PER CURIAM.

## I.

Bowling Green-Warren County Community Hospital Corp., d/b/a The Medical Center of Bowling Green, Kentucky ("Medical Center"), petitions this court to set aside the National Labor Relations Board's (the "Board") finding that Medical Center violated section 8(a)(3) of the National Labor Relations Act (the "Act"), 29 U.S.C. §§ 158(a)(3). The Board cross-petitions for enforcement of its order. Jurisdiction is predicated on section 10(f) of the Act, 29 U.S.C. § 160(f), and properly lies before this court, the alleged unfair labor practices taking place in Bowling Green, Kentucky.

## II.

In early 1981, Medical Center's administrator, John Desmarais, commissioned Meidinger, Inc. to conduct a wage study in order to ascertain whether any wage adjustments were necessary. Subsequent to the initiation of this study, on January 21, 1981, the board of directors of Medical Center received a recommendation from one of its committees to "(1) proceed as rapidly as possible to implement the framework of the Meidinger Plan and (2) to refer the Meidinger Plan to [the] administration and the Finance Committee for their recommendation on salary percentage changes for further augmentation of the plan."

On February 18, 1981, the Kentucky Nurses Association ("KNA") requested that Medical Center recognize it as the bargaining representative of Medical Center's registered nurses. Medical Center initially did not respond to this request, and on March 5, 1981, KNA petitioned the Board for a representation election. Immediately following KNA's petition, on March 13, 1981, Desmarais contacted Medical Cen-

ter's legal counsel by mail in order to determine whether the proposed wage increase could be properly implemented. Because the employees had been informed of the study, but no firm date nor dollar amount of wage adjustment had been fixed, Desmarais in his letter expressed doubts about going forward with the plan:

> I have grave doubts about the appropriateness of implementing this study at this time for those individuals to be included in the bargaining unit in the upcoming election being proposed by the Kentucky Nurses Association. Balancing this concern, however, is my desire to not penalize other hospital departments and employees who deserve adjustments.

On March 17, 1981, Medical Center's counsel responded to petitioner's inquiry with the following advice:

> Concerning your registered nurses who have been petitioned for by the Kentucky Nurses Association, the law is really unclear. On the other hand, if you have announced an increase or other change which would affect the petitioned for employees, established what the change will be (including the amount of increase if wage increases are involved) and designated a specific date when such will go into effect, you are required by law to implement the study since to do otherwise could be construed as the withholding of benefits because of the employees' activities. In your specific case, since the date of implemention has not been announced, nor have you announced the amount of increases, if any, to be plugged in as a result of the study, we feel, based on the present state of the law, that you should withhold the implementation of the study among those employees petitioned for by the KNA since it definitely does not appear that the criteria for legally implementing the study have been met. In the final analysis, you are on the horns of a dilemma. If you do not implement the study, you could be accused of withholding its im-

* Honorable Douglas W. Hillman, United States District Judge for the Western District of Michigan, sitting by designation.

plementation because of the employees' activity whereas, if you implement the study, you could be accused of having made the changes in order to persuade the employees not to engage in the activities. In order not to run the risk of violating the law you would be better served to withhold implementation of the study for those employees in the proposed Kentucky Nursing Association unit until the matter is finally resolved.

I certainly understand your desire not to penalize other hospital departments and employees by withholding the implementation of the study as it relates to them and feel it would be legitimate to implement the study in all other areas .... This implementation should be handled with the other departments and employees on a routine basis and you should make absolutely certain that there is no implication given the ... proposed KNA unit that they are not receiving adjustments because of any activities they might have or might now be engaged in.

Allegedly acting under its attorney's advice, Medical Center as of April 1, 1981, granted a wage increase to all of its employees other than the registered nurses[1] without setting forth its explanation concerning this action. The representation election was held on May 14, 1981, with KNA prevailing. In July 1981 Medical Center then notified KNA that unless it objected, the registered nurses would receive the survey-recommended wage increase effective July 26, 1981, but without foreclosing negotiations on the salary issue. KNA did not object, but rather requested that the increase be made effective as of April 1, 1981, consistent with the increase granted to other employees at that time. Medical Center refused to make the increase retroactive, and an unfair labor practice charge was subsequently filed with the Board by KNA.

The ALJ concluded upon submission of stipulated facts[2] that Medical Center violated sections 8(a)(1) and (3) of the Act by withholding an otherwise scheduled wage increase because of union activity. The Board, on the other hand, agreed that there had been a violation, but for a completely different reason. The Board concluded that because the wage increase had not been made definite in time or amount, and thus was not a scheduled increase, the withholding of such during the union organizational campaign did not violate the Act. The Board found, however, that the withholding of the wage increase from the registered nurses, while granting it to other employees, specifically violated section 8(a)(3) of the Act, evidencing a discriminatory motive on the part of Medical Center.

### III.

Clearly, Medical Center was put in a precarious situation by announcing the study and then having KNA petition for a representation election. By granting an unscheduled increase during the union organizational campaign, Medical Center would have been in violation of section 8(a)(1) of the Act. *NLRB v. Exchange Parts Co.*, 375 U.S. 405, 409, 84 S.Ct. 457, 459, 11 L.Ed.2d 435 (1964); *NLRB v. Arrow Molded Plastics, Inc.*, 653 F.2d 280, 283 (6th Cir.1981); *NLRB v. Naum Brothers, Inc.*, 637 F.2d 589, 591 (6th Cir.1981). Assuming the increase were deemed by the Board to be scheduled, the withholding of it during pendency of election proceedings would also be violative of the Act. *NLRB v. Dothan Eagle, Inc.*, 434 F.2d 93, 99 (5th Cir.1970). Thus, Medical Center was truly confronted with a dilemma; it was likely to be damned whether or not it granted an increase to the registered nurses as of April 1.

Despite the dilemma, the Board found that Medical Center could have avoided violating the Act by pursuing one of two

---

**1.** The wage increase was also denied Medical Center's ambulance drivers, due to their being represented by a union.

**2.** Of some significance is the stipulation that the "withholding of an increase for certain employees on April 1, 1981, was based solely on advice of counsel." *See infra* p. 44.

courses. It could have either completely withheld the increase to all its employees, or it could have explained the reason for denying the registered nurses any participation in the increase as of the April 1 effective date. The problem with the Board's proposed solutions is that they find support only by benefit of hindsight.

The ALJ found that the increase was in fact *scheduled,* and that by withholding it Medical Center violated the Act *per se.* Thus, even had Medical Center withheld the increase uniformly to the detriment of all employees, it may well have experienced unfair labor practice charges. Similarly, it is not so clear that had Medical Center attempted to explain the reason for the less than uniform increase it would have escaped Board action. Had it tendered such an explanation Medical Center might have been charged with attempting to influence the election results. *See, e.g., Great Atlantic & Pacific Tea Co.,* 166 N.L.R.B. 27 (1967), *enf'd in part,* 409 F.2d 296 (5th Cir.1969). We therefore are not persuaded by the Board's hindsight in this case. The choice made by Medical Center appears to have been a logical one in light of all the circumstances, although it resulted in a disparate impact upon the nurses.[3]

■ We are unwilling to hold that Medical Center's action constituted a *per se* violation of the Act. As stated, Medical Center was placed in a position where whatever it did could be interpreted as a violation of the Act. The better approach in this type of case is to look to all the relevant circumstances to determine whether the employer intended to discourage union activity. Is there substantial evidence to support a finding that Medical Center intended to discriminate against the registered nurses because of their union activity by withholding from them the wage increase while granting the same to others? *See Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

■ We conclude that there is no substantial evidence in the present record to support a finding of intentional discrimination. The case was presented to the ALJ on stipulated facts, one being that the "withholding of an increase for certain employees on April 1, 1981, was based *solely* on advice of counsel." (Emphasis added). Thus, General Counsel stipulated that the only reason for the disparate treatment was advice of counsel.[4] There is simply no evidence tending to contradict this stipulation. Based upon the circumstances of this case, including the precarious position in which Medical Center found itself, we are not willing to infer discriminatory intent. The Board was in error in making this unfounded inference on this record.

### IV.

For the foregoing reasons we hold that the Board has failed to establish either a section 8(a)(1) or 8(a)(3) violation in this case. Accordingly, Medical Center's petition to set aside the Board's finding is GRANTED, and the Board's cross-petition for enforcement is DENIED.

---

**3.** The nurses, of course, through their union, were free to bargain to make up for the delay in implementation of the increase.

**4.** The General Counsel's later attempt to "clarify" this stipulation is unavailing.