931 F.2d 887
 137 L.R.R.M. (BNA) 2440
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
Drivers, Chauffeurs, Warehousemen and Helpers Local Union
No. 639, Warehouse Employees Local Union No. 730, affiliated
with the International Brotherhood of Teamsters, Chauffeurs,
Warehousemen and Helpers of America, AFL-CIO, Intervenors,
v.
JUMBO PRODUCE, INC., Respondent.
 No. 90-2901.
 United States Court of Appeals, Fourth Circuit.
 Argued Dec. 4, 1990.
Decided May 3, 1991.
 
 On Application for Enforcement of an Order of the National Labor Relations Board.
 David A. Seid, National Labor Relations Board, Washington, D.C. (argued), for petitioner; Jerry M. Hunter, General Counsel, Robert E. Allen, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Barbara A. Atkin, Supervisory Attorney, National Labor Relations Board, Washington, D.C., on brief. Jonathan G. Axelrod, John R. Mooney, Elizabeth J. Head, Beins, Axelrod, Osborne & Mooney, P.C., Washington, D.C. (on brief), for intervenors.
 Edward Joseph Gutman, Blum, Yumkas, Mailman, Gutman & Denick, P.A., Baltimore, Md. (argued), for respondent.
 N.L.R.B.
 ENFORCEMENT GRANTED.
 Before K.K. HALL and WILKINS, Circuit Judges, and TILLEY, United States District Judge for the Middle District of North Carolina, Sitting by Designation.
 PER CURIAM:
 
 
 1
 The National Labor Relations Board seeks enforcement of its Order directing Jumbo Produce to cease and desist from: (1) unlawfully interrogating its employees about union activities; (2) unlawfully creating an impression of surveillance of employees' union activities; (3) unlawfully granting or promising to grant benefits to its employees in order to inhibit them from exercising their rights; (4) and unlawfully laying off and discharging employees for the purpose of discouraging union activities. The Board further directed that the ballots of six discharged employees be counted and, if needed, a new election held.
 
 
 2
 Reviewing the Board's order under Section 10(e) of the National Labor Relations Act (the Act), as amended, 29 U.S.C. Sec. 160(e), we conclude that there was substantial evidence to support the Board's conclusion that the Company committed unfair labor practices. Accordingly, we affirm the Board's findings and enforce the order against Jumbo Produce.
 
 I.
 
 3
 Jumbo Produce is a family-run business founded by Irving Herman, who serves as its president. The Company operates a warehouse in Landover, Maryland, where it receives, stores, and distributes produce to its supermarkets in Maryland and Virginia. Part of the warehouse operations consisted of a six-employee packing department which ran three different packing machines.
 
 
 4
 In 1984, the Drivers, Chauffeurs, Warehousemen and Helpers Local Union No. 639 and the Warehousemen Employees Local 730 (collectively called the Union), conducted an organizing campaign and election among the Jumbo Produce employees. After an unsuccessful election, the Union began another organizing campaign in September of 1985. In October, Company vice president Issac Gendelman and warehouse manager Jack Smith met with employee Bertis Etienne, who informed them about the ongoing union activity, including a few names and the number of people attending the meetings. During this same time period, Smith approached Genaro Menbreno, a packing department employee, as Menbreno was leaving work and accused him of going to a union meeting. After the encounter, Menbreno's work schedule was adversely affected by a decrease in scheduled hours.
 
 
 5
 On November 7, 1985, Jumbo Produce closed two machines in its packing department and laid off all six employees working there, asserting that the machines were obsolete and no longer cost effective. Since the closing of the packing department, the Company has placed newspaper ads for other warehouse positions and has continued to hire new warehouse employees. None of the laidoff employees, however, has been offered a warehouse job.
 
 
 6
 Shortly before the new union election, Company vice president Michael Herman told remaining employees that they did not need a union and informed them that anyone with a problem should come to him.
 
 
 7
 When the election was held, the union won by one vote. The Company challenged the ballots of four of the laid-off packing department employees who had appeared and voted in the election.
 
 II.
 
 8
 The Board's findings are entitled to affirmance when supported by substantial evidence on the record as a whole. The reviewing court is not to substitute its own judgment for that of the Board, even when it might have drawn a different conclusion had it decided the issue de novo. Owens-Corning Fiberglass Corp. v. NLRB, 407 F.2d 1357, 1360 (4th Cir.1969).
 
 
 9
 The Board first determined that Jumbo Produce violated Section 8(a)(1) of the Act (29 U.S.C. Sec. 158(a)(1)), by coercively interrogating an employee regarding his union activities and by creating the impression of surveillance of union activities. When reviewing a Board's decision, this court must recognize the Board's competence to judge the impact of utterances made in the context of the employer-employee relationship. NLRB v. Gissel Packing Co., 395 U.S. 575, 620 (1969). Therefore, we find the questioning of Menbreno by Smith, concerning his attendance at a union meeting, to be sufficient evidence to support the Board's finding.
 
 
 10
 The Board further determined that Jumbo Produce violated Section 8(a)(1) of the Act by unlawfully granting or promising to grant a benefit to its employees in an effort to inhibit them from exercising their rights. This type violation occurs when an employer offers to make improvements in working conditions as a means to induce abandonment of union activity. NLRB v. Exchange Parts Co., 375 U.S. 405 (1964). Company vice president Herman told the employees that any person with a problem should come to him. The offer was made shortly before the union election and had been immediately preceded by the statement that employees did not need a union. This evidence is sufficient to support the Board's finding.
 
 
 11
 The Board found that Jumbo Produce violated Section 8(a)(3) of the Act by attempting to discourage union activities when it laid off and discharged the six packing department employees. To be unlawful, Jumbo Produce's decision to lay off the employees must have been at least partially motivated by anti-union "animus." Birch Run Welding & Fabricating, Inc. v. NLRB, 761 F.2d 1175, 1179 (6th Cir.1985). Although the Board concluded that the Company had a legitimate basis to discontinue the packing department, it found the decision to lay off the six employees had been made for the purpose of discouraging or chilling union affection among the remaining employees. The record reveals that Jumbo Produce offered retail store positions to the six employees and that the employees would not have been eligible to vote in the upcoming election had the retail positions been accepted. During this same time, the company filled jobs in the warehouse through newspaper advertisements and other methods, yet warehouse jobs were not offered to the six laid-off employees. This is sufficient to provide a substantial basis for the Board's finding that the Company violated Section 8(a)(3).
 
 
 12
 We have considered the other positions advanced by Jumbo Produce and consider them to be without merit. We hold that, on the record as a whole, the findings of the Board are supported by substantial evidence, and that the Board is therefore entitled to enforcement of its order.
 
 
 13
 ENFORCEMENT GRANTED.