GREGORY, Circuit Judge,
concurring in part and dissenting in part:
As for the National Labor Relations Board’s findings of unfair labor practices, I *439 agree with the majority in some respects, and with the dissent in others. I also concur with the majority that the record does not support the issuance of bargaining orders. I respectfully dissent, however, from the majority’s refusal to remand the case to the Board for reconsideration.
I
A
I believe substantial evidence supports the Board’s findings that Overnite’s conduct at the four service centers and its March 1995 discriminatory wage increase violated § 8(a)(1) of the National Labor Relations Act. See NLRB v. Exchange Parts Co., 375 U.S. 405, 409, 84 S.Ct. 457, 11 L.Ed.2d 435 (1964). In this respect, I concur with all of my good colleagues. I also concur with the majority opinion insofar as it holds that Overnite’s presentation of the wage increase in December 1995 to its employees did not violate §§ 8(a)(1) or 8(a)(5) of the Act. See Americare Pine Lodge Nursing & Rehab. Ctr. v. NLRB, 164 F.3d 867, 875-76 (4th Cir.1999).
B
I agree with my dissenting colleagues, however, that Overnite committed unfair labor practices in granting the 1996 wage increase. First, as Judge King indicates, an employer violates §§ 8(a)(1) and 8(a)(5) of the Act when it unilaterally changes the terms or conditions of employment under negotiation. NLRB v. Katz, 369 U.S. 736, 743, 82 S.Ct. 1107, 8 L.Ed.2d 230 (1962). Whether a yearly wage increase constitutes a term or condition of employment turns on whether the increase has become a “reasonable expectation” of the employees. Phelps Dodge Mining Co. v. NLRB, 22 F.3d 1493, 1496 (10th Cir.1994). There is substantial evidence in the record to support the Board’s finding that the wage increase had become a reasonable expectation and that Overnite therefore changed the terms and conditions of employment of the represented employees by not extending the 1996 wage increase to them. Overnite Transp. Co., 329 N.L.R.B. 1, 106-09 (Nov. 10, 1999). That Overnite tied the wage increase to a productivity package does not undermine the Board’s conclusion. As the ALJ found, Overnite’s practice of granting yearly wage increases was largely driven by the need to maintain competitive wages. Id. The company’s desire to make other productivity improvements — knowing that these changes would increase discontent among its employees— merely reinforced the need to continue the practice; it did not fundamentally alter the nature of the practice.
Second, Overnite violated §§ 8(a)(1) and 8(a)(3) of the Act by discriminating in regard to the terms and conditions of employment in order to discourage union membership. There is substantial evidence in the record to support the Board’s finding that Overnite’s discriminatory 1996 wage increase was unlawfully motivated and therefore in violation of the Act. Overnite, 329 N.L.R.B. at 109-10.
C
The majority and the dissent also disagree over whether two of the attorneys’ questions were coercive and therefore in violation of § 8(a)(1) of the Act. I agree with the majority that the first question was not coercive and with the dissent that the second question was coercive. The first question asked:
If you didn’t sign the card or petition the first time you were asked, why did you sign it when you were asked to do so again?
Overnite, 329 N.L.R.B. at 62. We have previously held that “[ejmployers are free to ask employees about their sentiments *440 regarding a union provided the questioning is not coercive.” Standard-Coosa-Thatcher Carpet Yarn Div., Inc. v. NLRB, 691 F.2d 1133, 1137 (4th Cir.1982). This question was not particularly coercive on its face, and the interviewees were given multiple assurances that there would be no retaliation. Like the majority, I would hold that the Board’s finding that this question was coercive is not supported by substantial evidence. See Johnnie’s Poultry Co., 146 N.L.R.B. 770, 775 (1964); NLRB v. P.B. & S. Chem. Co., 567 F.2d 1263, 1267 (4th Cir.1977).
Unlike the first, the second question was coercive. The second question asked:
Did anyone from the Union tell you it was important for you to report to the Union or any employee any problems you had with the Company since the Union needed unfair labor practice charges to help them overturn the election? If so, who?
Overnite, 329 N.L.R.B. at 62. As Judge King points out, this question exceeds Ov-ernite’s “legitimate purposes for questioning employees.” The question was particularly coercive because it pried into the employees’ participation in organizing activities — protected conduct under the Act. 29 U.S.C. § 157; Overnite, 329 N.L.R.B. at 113. Accordingly, it was unlawful.
D
Next, I think there is substantial evidence in the record to support the Board’s finding that Overnite violated § 8(a)(1) of the Act by “granting to unrepresented employees the overtime portion of the productivity package in order to dissuade them from seeking union representation.” Overnite, 329 N.L.R.B. at 5. Neither the majority nor the dissent specifically addresses the overtime benefit. The Board affirmed the finding of the ALJ, who stated:
Overtime was an issue that was widespread in the campaign, and [Overnite’s] offer was • an obvious response to the complaints of the employees and, in fact, could be anticipated from many of Douglas’s conversations with employees early in 1995. It would have been difficult for him to renege on his promises without further erosion of employee support.
Overnite, 329 N.L.R.B. at 111. Despite Overnite’s contention that it intended to shorten hours and therefore rarely pay overtime, the overtime provision was a new benefit in the form of premium pay. Like the unlawful 1995 wage increase, the grant of overtime pay violated § 8(a)(1) of the Act because it was intended to discourage union organization. Id.; see Exchange Parts, 375 U.S. at 409, 84 S.Ct. 457; J.P. Stevens & Co. v. NLRB, 461 F.2d 490, 492 (4th Cir.1972).
II
I agree with the majority that we cannot enforce the bargaining orders on the current record, but I dissent from the majority’s decision not to remand to the Board for reconsideration of its bargaining orders. The Board may very well reach the same conclusion after further consideration, and we should allow for the possibility that bargaining orders might yet be warranted.
We grant considerable deference to the Board’s choice of remedy for unfair labor practices. Virginia Elec. & Power Co. v. NLRB, 319 U.S. 533, 540, 63 S.Ct. 1214, 87 L.Ed. 1568 (1943); NLRB v. Williams Enters. Inc., 50 F.3d 1280, 1289 (4th Cir.1995); NLRB v. So-Lo Foods, Inc., 985 F.2d 123, 126 (4th Cir.1992). Judge King correctly indicates that “the Board’s ‘choice of remedy must ... be given special respect by reviewing courts’ considering the Board’s ‘fund of knowledge and expertise all its own.’ ” So-Lo Foods, 985 *441 F.2d at 126 (quoting NLRB v. Gissel Packing Co., 395 U.S. 575, 612 n. 32, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969)). This deference, however, is conditional. In order for us to perform our proper role in reviewing agency action, the Board must make its reasoning clear on the record, and that reasoning must be consistent with our statements of the law. Sure-Tan, Inc. v. NLRB, 467 U.S. 883, 899 n. 9, 104 S.Ct. 2803, 81 L.Ed.2d 732 (1984); NLRB v. J. Weingarten, Inc., 420 U.S. 251, 265-67, 95 S.Ct. 976, 43 L.Ed.2d 171 (1975). Here, in addition to the errors noted above, and for reasons identified by the majority, the Board has failed to engage in the reasoned decision-making process we demand for issuance of Gissel bargaining orders. NLRB v. Apple Tree Chevrolet, Inc., 671 F.2d 838, 840 (4th Cir.1982). Specifically, the Board has not adequately considered the dissipation of the effects of the unlawful practices in determining whether fair elections are now possible. The Board failed to fully examine the mitigating effects of employee and management turnover and the passage of time. Further, the Board inappropriately relied on conclu-sory statements such as “the lore of the shop,” Overnite, 329 N.L.R.B. at 5 (quoting Bandag, Inc. v. NLRB, 583 F.2d 765, 772 (5th Cir.1978)), to explain why the effects of prior illegalities had not dissipated. We would be forsaking our responsibilities if we upheld bargaining orders based on reasoning such as this.
I think the majority errs, however, in refusing to remand for reconsideration. When an agency fails to support its findings with adequate reasoning, the agency is typically permitted to supplement its statement of reasons. 3 Kenneth C. Davis & Richard J. Pierce, Jr., Administrative Law Treatise § 18.1 (3d ed.1994). Similarly, when an agency acts based on a misunderstanding of the law, the agency often may support the same action after considering the correct principles of law. Id. When it comes to fashioning a remedy for unfair labor practices, the Board is particularly entitled to this opportunity. The Supreme Court has made it clear that we should not substitute our judgment for that of the Board in choosing an appropriate remedy:
Because the relation of remedy to policy is peculiarly a matter for administrative competence, courts must not enter the allowable area of the Board’s discretion and must guard against the danger of sliding unconsciously from the narrow confines of law into the more spacious domain of policy.
Sure-Tan, 467 U.S. at 899, 104 S.Ct. 2803 (quoting Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 194, 61 S.Ct. 845, 85 L.Ed. 1271 (1941)). If we cannot uphold the Board’s initial choice of remedy, the proper disposition in most cases is remand to the Board for reconsideration. “Such action ‘best respects the congressional scheme investing the Board and not the courts with broad powers to fashion remedies that will effectuate national labor policy.’ ” Sure-Tan, 467 U.S. at 905, 104 S.Ct. 2803 (quoting NLRB v. Food Store Employees, 417 U.S. 1, 10, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974)).
Indeed, remand for reconsideration was the result in Gissel itself. After holding that the Board failed to support its issuance of a Category II bargaining order with record findings consistent with the relevant legal standards, the Court remanded the case to the Board for proper findings. Id. at 616, 89 S.Ct. 1918. In doing so, the Court stated that it had been inappropriate for the court of appeals— this very circuit — to make contrary findings. Id. Since Gissel, we have recognized the need to remand for reconsideration when the Board has exceeded the scope of its remedial powers. See Ultrasystems *442 Western Constructors, Inc. v. NLRB, 18 F.3d 251, 259 (4th Cir.1994) f[W]hen selection of the appropriate remedy is at issue, as it is here, the appropriate course to follow is to remand the case to the Board to fashion the remedy of its choosing.”); NLRB v. D & D Enterprises, Inc., 125 F.3d 200, 209 (4th Cir.1997) (remanding to Board for reconsideration of whether prior unfair labor practices continued to influence employees’ support of union for purposes of decertification). See also Baltimore Sun Co. v. NLRB, 257 F.3d 419, 432 (4th Cir.2001) (King, J., dissenting).
The majority demonstrates that bargaining orders are not supportable on this record, but does not foreclose that there may be “substantial evidentiary support [not yet made part of the record] that the effects of unlawful practices have in fact continued to be felt in the workplace,” Be-Lo Stores v. NLRB, 126 F.3d 268, 283 (4th Cir.1997). If given the chance, the Board might consider a number of factors on remand. For example, the particular structure of the company may play a part in whether the effects lingered. Although it seems somewhat counterintuitive for a trucking company like Overnite, employee turnover and the passage of time may not have had the effect we typically presume. The record is simply inadequate for us to make a judgment. Additionally, Over-nite’s unlawful conduct may have actually caused some of the turnover. If that is so, the Board should be allowed to consider that fact in deciding whether to reissue a bargaining order. Moreover, even if the majority is correct that Overnite did not commit continuing violations after the elections, the company’s later conduct (though lawful) may have had the effect of reinforcing the earlier unlawful acts. The Board should be allowed to consider this as well. We should hesitate before concluding that further input from the Board would be unhelpful.
I believe we should allow the Board to look before we leap. Accordingly, we should grant in part and deny in part Overnite’s petition for review, deny the Board’s cross-petition for enforcement, and remand to the Board so that it may supplement its reasoning and apply the appropriate legal standards. We should not take the extra step of limiting the Board’s choice of remedies to new elections.
I respectfully concur in part and dissent in part.