**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

Nos. 19-1504 and 19-1680

———————

NATIONAL LABOR RELATIONS BOARD
Petitioner

v.

IMAGEFIRST UNIFORM RENTAL SERVICE LLC
Respondent

IMAGEFIRST UNIFORM RENTAL SERVICE LLC,
Petitioner

v.

NATIONAL LABOR RELATIONS BOARD,
Respondent

———————————————————

On Application for Enforcement of an Order of the
National Labor Relations Board and Petition for Review of the
National Labor Relations Board Order
(Case Nos. 22-CA-161563 and 22-CA-181197)

———————————————

Submitted under Third Circuit LAR 34.1(a)
on November 14, 2019

Before:  JORDAN, SCIRICA and RENDELL, Circuit Judges

**RENDELL**, <u>Circuit Judge</u>.

The National Labor Relations Board ("NLRB") petitions for enforcement of its August 27, 2018 Decision and Order that ImageFIRST Uniform Rental Service, LLC ("IF") engaged in unfair labor practices in violation of Section 8 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1). IF cross-petitions for review of the NLRB's Order. For the following reasons, we will grant the NLRB's application for enforcement and deny IF's cross-petition for review.

I.

In July 2015, the Laundry Distribution and Food Service Joint Board, Workers United, affiliated with the Service Employees International Union ("the union") began an organizing campaign at IF's facility in Clifton, New Jersey. As part of the campaign, union representatives distributed leaflets outside of the facility and visited IF employees' homes. Shortly after learning of this union activity, IF owner Jeffery Bernstein and general manager James Kennedy conducted multiple group meetings with plant employees, soliciting grievances and assuring employees that changes would be made. During these meetings, plant employees complained about issues that they were having with two employees: Supervisor Joe Ventura and Lead Person Miriam Farez. In response,

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Bernstein instructed Kennedy to terminate them. During these meetings, Kennedy also received feedback that the employees were unsatisfied with the meals IF provided. In response, IF provided the employees with their preferred food choices. After the union campaign, IF also provided meals more frequently and took employees out to restaurants for lunch.

## II.

The union filed an unfair labor practice charge against IF, and the NLRB issued a complaint against IF. An Administrative Law Judge conducted a hearing and concluded that IF's conduct violated Section 8(a)(1) of the NLRA. On review, the NLRB affirmed the ALJ's decision and adopted its Order requiring IF to cease its unfair labor practices. These unfair labor practices included: (1) discharging Ventura and Farez in order to discourage support for the Union; (2) "soliciting grievances and impliedly promising to remedy those grievances in a manner different than it did prior to the start of the union campaign"; (3) increasing the "frequency and quality of food" provided to employees; (4) physically confronting a union representative; and (5) "maintaining an illegal rule in its employee handbook." JA 36. The NLRB's application for enforcement and IF's cross-petition for review followed.[1]

## III.

---

[1] IF does not seek review of the NLRB's conclusions under (4) and (5).

## A.

The NLRB had jurisdiction over this matter under 29 U.S.C. § 160(a). We have jurisdiction to review the NLRB's Order pursuant to 29 U.S.C. § 160(f) and jurisdiction to review its application for enforcement pursuant to 29 U.S.C. § 160(e).

We will accept the NLRB's factual findings as "conclusive if supported by substantial evidence," and subject any legal conclusions to plenary review with "deference to the [NLRB's] interpretation of the NLRA." *1621 Route 22 W. Operating Co., LLC v. NLRB*., 825 F.3d 128, 144 (3d Cir. 2016). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Citizens Publ'g & Printing Co. v. NLRB*, 263 F.3d 224, 232 (3d Cir. 2001). We defer to the NLRB's credibility determinations and reverse "only if they are inherently incredible or patently unreasonable." *Grane Health Care v. NLRB*., 712 F.3d 145, 149 (3d Cir. 2013).

## B.

An employer cannot "interfere with, restrain, or coerce employees" in the exercise of protected activities, which includes the right to join a labor organization. 29 U.S.C. § 158(a)(1). "To establish a violation, it need only be shown that under the circumstances, the employer's conduct may reasonably tend to coerce or intimidate employees in the exercise of rights protected under the [NLRA]." *1621 Route 22 W. Operating Co.*, 825 F.3d at 146 (citation and internal quotation marks omitted).

The NLRB argues that IF engaged in multiple unfair labor practices in order to discourage employees from supporting the union. First, the NLRB argues that IF

4

unlawfully discharged Ventura and Farez in order to discourage unionization. "[I]t is an unfair labor practice for an employer actually to grant benefits to employees shortly before a representation election in order to induce them to vote against the union." *NLRB v. Eagle Material Handling, Inc.*, 558 F.2d 160, 164 (3d Cir. 1977). In *Eagle Material*, we held that a company violated the NLRA when it terminated an unpopular supervisor shortly before the union's representation election. *Id*. Like the employer in *Eagle Material*, IF terminated two unpopular employees—Supervisor Ventura and Lead Person Farez—less than ten days after learning about the union activity.

IF argues that Ventura and Farez were fired because they violated company values. We find this argument unconvincing since IF was aware of ongoing issues with Ventura and Farez prior to the union campaign, however did not terminate them until after the union activities began. Accordingly, we find that substantial evidence supports the NLRB's conclusion that IF unlawfully discharged two unpopular supervisors in violation of the NLRA.

Second, the NLRB argues that IF unlawfully altered its practice of soliciting employee grievances in response to the union's organizing campaign. "An employer violates Section 8(a)(1) by expressly or impliedly promising to remedy employee grievances if they reject the Union." *1621 Route 22 W. Operating Co*, 825 F.3d at 146. "[M]ere solicitation of employee grievances prior to an election is not an unfair labor practice." *Eagle Material*, 558 F.2d at 164. However, "when the employer's grievance solicitation is accompanied by promises of benefits contingent upon the employees'

rejection of the union, such conduct constitutes an interference with the rights of employees guaranteed by [the Act]." *Id*.

Prior to the union campaign, Bernstein met with plant employees on a monthly basis, however soon after learning about the union campaign he began meeting with employees weekly. General ~~Manager~~ James Kennedy also began soliciting grievances from plant employees and promised to make significant changes based on the employee feedback he received. Plant employees also confirmed that their meetings with Bernstein and Kennedy were different once the union began its organizing campaign. We find that substantial evidence supports the NLRB's conclusion that IF unlawfully solicited employee grievances.

Third, the NLRB argues that IF improperly increased the quality and quantity of free meals it provided to employees after the union began its organizing campaign. The Supreme Court has held that there is a "danger in well-timed increases in benefits," and that employees are "not likely to miss the inference that the source of benefits now conferred is also the source from which future benefits must flow and which may dry up if it is not obliged." *NLRB v. Exch. Parts Co.*, 375 U.S. 405, 409 (1964).

IF argues that it did not significantly alter its food practices in response to the union's organizing campaign. However, several employees testified to the opposite. Specifically, IF began providing breakfast and lunch to its employees on a weekly basis and offered employees their preferred food choices—Creole and Hispanic cuisine. IF also took employees off-site for lunch and allowed them to choose from a menu—an option never previously provided to employees. We find that substantial evidence exists

6

to support the NLRB's conclusion that the free meals were provided to undermine the union's organizing campaign.

IV.

For the foregoing reasons, we will grant the NLRB's application for enforcement and deny IF's cross-petition for review

7